(No. 50757.█

DALE BUNNEY *et al.*, Appellants and Appellees, v. THE INDUSTRIAL COMMISSION *et al.*—(Howard Roll Long, Appellee and Appellant.)

*Opinion filed April 3, 1979.—Rehearing denied May 30, 1979.*

414

UNDERWOOD, J., took no part.

Heyl, Royster, Voelker & Allen, of Springfield (Gary M. Peplow, of counsel), for Dale Bunney *et al.*

Livingston, Barger, Brandt, Slater & Schroeder, of Bloomington (Ralph Schroeder, of counsel), for Howard Roll Long.

MR. JUSTICE RYAN delivered the opinion of the court:

Howard Long has sought an award under the Workmen's Compensation Act (Ill. Rev. Stat. 1973, ch. 48, par. 138.1 *et seq.*) and the Workmen's Occupational Diseases Act (Ill. Rev. Stat. 1973, ch. 48, par. 172.36 *et seq.*) for a lung condition allegedly contracted from his work for Dale Bunney at the Saybrook Grain Company. An arbitrator awarded compensation under the Workmen's Occupational Diseases Act and dismissed the application filed under the Workmen's Compensation Act. Both employer and employee sought review by the Industrial Commission, which affirmed the decisions of the arbitrator as to both claims. The circuit court of McLean County confirmed the decisions of the Commission. Both the employer and the employee have appealed to this court under Rule 302(a) (58 Ill. 2d R. 302(a)).

Two issues are raised by this appeal. The first is whether the Workmen's Occupational Diseases Act (Ill. Rev. Stat. 1973, ch. 48, par. 172.36 *et seq.*) allows an award for aggravation of Long's preexisting lung condition. The second is whether Long may recover under the Workmen's Compensation Act if the Workmen's Occupational Diseases Act award is disallowed.

Howard Long worked at the Saybrook Grain Company from March 1969 to July 16, 1973. He had only a second grade education and had been employed in heavy labor jobs for more than 20 years. In July 1973, Long was 42 years old, married and had no children under 18. At

Saybrook, he performed a variety of jobs common to grain elevators. He drove a truck much of the time, but also loaded and unloaded grain, worked in the grain bins and on occasion cleaned those bins with dangerous cleaning compounds. While working around large amounts of dust, Long was to have worn a small mask, but he often chose not to wear one either because it was unavailable or because he believed it was unnecessary. Long testified that in 1969 he had no significant medical problems; however, after he worked for the grain company for a time, when he breathed the dust at work he felt a burning in his chest and lungs and found it difficult to breathe. After working there for a longer period, his condition "kept getting worse and worse." The last six months that he worked he "was getting filled up" and he "was just slowing down more and more."

On July 17, 1973, Long stated he blacked out while sweeping the bins. Although he used the term "blacked out" he stated that he was never unconscious, "but I was past maneuvering." He stated that he had "blacked out" on several occasions. On the following day he was examined by Dr. Que and subsequently operated on for removal of a large bullous cyst and a moderate-size bullous bleb from the left lung. All the evidence indicates that the condition of the lung requiring the surgery was the result of Long's emphysematous condition.

At the arbitration hearing, Dr. John Lawrence, who had examined and treated Long subsequent to the surgery, testified that Long's condition could have been caused by the grain dust at Saybrook. However, he also noted, with an equal degree of medical certainty, that Long's condition may have been caused by his sustained smoking. Dr. Lawrence testified that Long had told him that for nearly 20 years he smoked two packs of cigarettes a day. Long testified that he smoked no more than one pack of cigarettes a day and he also smoked a pipe. Long's theory

of recovery is that the dust that he breathed at work aggravated his preexisting emphysema. Dr. Lawrence testified that in his opinion Long had a preexisting condition of pulmonary emphysema which he had before he started to work in the dust at the elevator and that the dust and working conditions aggravated "his underlying condition."

This claim arose under the Workmen's Occupational Diseases Act as it existed prior to amendment in 1975 (Ill. Rev. Stat. 1973, ch. 48, par. 172.36 *et seq.*). That act provided:

> "Ordinary diseases of life to which the general public is exposed outside of employment shall not be compensable, except where the said diseases follow as an incident of an occupational disease as defined in this Section.
>
> A disease shall be deemed to arise out of the employment only if there is apparent to the rational mind, upon consideration of all the circumstances, a direct causal connection between the conditions under which the work is performed and the occupational disease *** ." Ill. Rev. Stat. 1973, ch. 48, par. 172.36(d).

This court has previously held that emphysema is an ordinary disease of life. (*International Harvester Co. v. Industrial Com.* (1973), 56 Ill. 2d 84, 88; *Rockford Transit Corp. v. Industrial Com.* (1967), 38 Ill. 2d 111, 113.) In addition, under the Workmen's Occupational Diseases Act, as it existed prior to the 1975 amendment, this court held that since emphysema is an ordinary disease of life, the mere showing that the condition of one's employment aggravated the preexisting emphysematous condition is not sufficient to support an award for compensation. (*Lewis v. Industrial Com.* (1967), 38 Ill. 2d 461, 465-66; *Rockford Transit Corp. v. Industrial Com.* (1967), 38 Ill. 2d 111, 114.) Thus, Dr. Lawrence's testimony, instead of supporting the Industrial Commission's award under the Workmen's Occupational Diseases Act, places this case squarely within the holding of *Rockford Transit* and *Lewis*. In order to sustain an award

under the Workmen's Occupational Diseases Act for the aggravation of a preexisting disease, the aggravation must follow as an incident of an occupational disease as defined in the statute. (*Hansell-Elcock Co. v. Industrial Com.* (1941), 376 Ill. 151; *Stewart Warner Corp. v. Industrial Com.* (1941), 376 Ill. 141; *Rockford Transit Corp. v. Industrial Com.*) Of course, if the preexisting condition had its origin in prior employment, the aggravation of the condition by subsequent employment is compensable. (*Caterpillar Tractor Co. v. Industrial Com.* (1976), 63 Ill. 2d 153.) In light of this, the Workmen's Occupational Diseases Act award is against the manifest weight of the evidence and must be reversed.

Having reversed the Workmen's Occupational Diseases Act award, we now consider the claim for benefits under the Workmen's Compensation Act. In *International Harvester Co. v. Industrial Com.* (1973), 56 Ill. 2d 84, this court considered a claim for the aggravation of a preexisting emphysematous condition under the Workmen's Compensation Act. The facts in that case were very similar to those involved in the case before us. In *International Harvester,* as in this case, the claimant was suffering from pulmonary emphysema. He had no difficulty in breathing when he started to work for his employer, and a doctor testified that the claimant's condition was aggravated by the irritants in the air at his place of employment. In each case the employee's condition gradually worsened over an extended period of time until finally he was compelled to cease working. In *International Harvester* this court stated of the employee:

"He did not suffer from an accidental injury within the meaning of the Act. He suffered from a gradually debilitative disease. He was aware of the manifestation of this disease more than a year before the date on which he now claims he suffered an accidental injury. He suffered no

sudden disablement from the aggravation, nor was there a sudden giving way of his body structure in the manner that that term has heretofore been used by this court. As to the cause, Dinwiddie can point to no definite time, place or cause of the aggravation except to say that it occurred over the six-year span of time during which he worked as a welder for Harvester." (56 Ill. 2d 84, 90.)

In *International Harvester* this court distinguished *Leason v. Industrial Com.* (1973), 55 Ill. 2d 486, a case which this court decided at the same term. In *Leason,* the claimant also suffered from pulmonary emphysema. On July 11, 1967, he was assigned to clean the furnace wherein there were noxious fumes. An oxygen mask which he had previously used for his work was not available, and he entered the area without one. He collapsed while performing the work and was taken to the hospital. The parties stipulated that the employee had suffered an accidental injury on that date. Therefore, in *Leason* the controlling question in *International Harvester,* whether the employee had sustained an accidental injury, was not in issue but had been stipulated to.

The claimant also contends that this court's holdings in *Illinois Institute of Technology v. Industrial Com.* (1975), 60 Ill. 2d 64, and *Ajax Buff Co. v. Industrial Com.* (1974), 56 Ill. 2d 575, have overruled *International Harvester.* This, of course, is not correct. *Illinois Institute of Technology* specifically states that that case is dissimilar to *International Harvester,* pointing out that the employee in the case it was considering suffered a sudden disablement. After distinguishing its case from *International Harvester,* the court in *Illinois Institute of Technology,* in support of its holding, cited *Ajax.* In *Ajax* the employee, who suffered from a congenital aneurysm in the brain, had a stroke while at work on May 22, 1968, which the medical testimony related to the carbon monoxide in the

air which the claimant constantly breathed at his place of employment. Thus, in *Illinois Institute of Technology* and in *Ajax* the employee in each case suffered an "accident" within the meaning of the statute, whereas in *International Harvester,* and in the case we are now considering, the employee suffered from the gradual debilitative effects of an ordinary disease of life which ultimately incapacitated him.

The Workmen's Compensation Act is meant to provide compensation for accidental injuries. This court has in the past fairly well defined the limits of the meaning of that term. As we stated in *International Harvester,* if recovery under the Workmen's Compensation Act were permitted in this case, the distinction between the Workmen's Occupational Diseases Act and the Workmen's Compensation Act would be blurred. The Workmen's Occupational Diseases Act was enacted to supplement the deficiencies in the Workmen's Compensation Act. The particular disabling factual situation in the case now before us, and in the *International Harvester* case, was an area that had been omitted by the legislature when it enacted the Workmen's Occupational Diseases Act. As we noted in *International Harvester*:

> "The net result of our conclusion in this case coupled with the decision in *Rockford Transit Corp.* is to deny recovery under either act for certain disabilities arising from aggravations of pre-existing ordinary diseases of life." (56 Ill. 2d 84, 93.)

In both *Rockford Transit* and *International Harvester,* this gap in the law was noted and the legislature was invited to change the provisions of the Workmen's Occupational Diseases Act to eliminate this unprovided-for area. The legislature has responded and has amended the Workmen's Occupational Diseases Act effective July 1, 1975. Section 1(d) of the Act (Ill. Rev. Stat. 1975, ch. 48, par.

172.36(d)) no longer refers to ordinary diseases of life and specifically states that the term "occupational disease" means "a disease arising out of and in the course of the employment or *which has become aggravated and rendered disabling as a result of the exposure of the employment.*" The italicized language has been added to cover the situations involved in this case and in *International Harvester.*

This case, however, must be decided on the law as it existed prior to the 1975 amendment to the Workmen's Occupational Diseases Act. The facts here will not support recovery under the pre-1975 Workmen's Occupational Diseases Act, and because of the absence of an accidental injury, which will satisfy the time, place and cause requirement, no recovery can be had under the Workmen's Compensation Act.

Accordingly, the judgment of the circuit court of McLean County is reversed as to the Workmen's Occupational Diseases Act and affirmed as to the claim filed under the Workmen's Compensation Act, and the award of the Industrial Commission is set aside.

*Affirmed in part and reversed in part; award set aside.*

MR. JUSTICE UNDERWOOD took no part in the consideration or decision of this case.