GREATER PEORIA MASS TRANSIT DISTRICT, Appellant, v. THE INDUSTRIAL COMMISSION *et al.,* (Florida Bonds, Appellee).

*Opinion filed May 30, 1980.*

Westervelt, Johnson, Nicoll & Keller, of Peoria (Robert D. Jackson, of counsel), for appellant.

Vonachen, Cation, Lawless, Trager & Slevin, of Peoria (John A. Slevin, of counsel), for appellee.

MR. JUSTICE CLARK delivered the opinion of the court:

This case involves a claim filed under the Workmen's Compensation Act (Ill. Rev. Stat. 1973, ch. 48, par. 138.1 *et seq.*). The arbitrator found that petitioner, Florida Bonds, sustained an accidental injury arising out of her employment and entered an award for medical expenses, temporary total disability, and 30% loss of use of her right arm. The Industrial Commission set aside the arbitrator's

award for permanent disability but entered an award for medical expenses and temporary total disability. The circuit court of Peoria County confirmed the decision of the Commission. The employer filed this appeal and Florida Bonds cross-appealed pursuant to Rule 302(a). 73 Ill. 2d R. 302(a).

Florida Bonds was a 32-year-old bus driver with three years of experience when, on August 23, 1977, she returned from her bus route at approximately 7 p.m. She proceeded to the drivers' room to leave public schedules and transfers on a window ledge. At the hearing before the arbitrator, she described what happened next:

> "As I, you know, went to put them up in window they fell, and so I tried leaning over, I don't know how I leaned over, but I was hurting, my back was hurting pretty bad. So, I leaned over and I lost my balance and that way I like stumbled, you know, and I tried to catch myself, and that's when my shoulder hit something. I think it hit, I am not sure you know, but anyway I felt this pain in my shoulder. And I couldn't get it out.
>
> THE ARBITRATOR: Which shoulder is that?
> THE WITNESS: Right shoulder."

Upon further questioning by her own attorney, she testified as follows:

> "Q. What was it, if you can recall, that your shoulder hit?
> ***
> A. I am not sure because here I was bending over it sort of, you know, to pick up this transfer color, and I leaned over some kind of way and I went to catch myself and I felt this pain in my shoulder, you know. This one was back this way, and here I was picking it up like that (indicating).
> Q. Which hand were you referring to?
> A. I was reaching with my left.
> ***
> Q. Were you close enough that you could reach out and touch [the wall] ***?
> A. I wasn't close enough to reach and touch it ***."

On cross-examination she testified that she had bent down

slowly to pick up the transfer schedules, that she lost her balance just before she actually picked them up (her testimony is not clear on this point), that she "went over" to the right when she lost her balance, had no bruises or contusions on her body after her loss of balance, and did not know the part of her arm that came into contact with any object.

Later that evening she went to the emergency room of a local hospital where it was determined that her shoulder was dislocated and her physician subsequently decided that surgery was necessary to prevent recurrent dislocations.

The employer argues that there was no evidence that Miss Bonds had bumped her arm and that since her shoulder had degenerated to the point where any minor or insignificant trauma could have caused the dislocation, her employment subjected her to no risks beyond those faced by the general public, making her injury noncompensable. We agree with the employer that because of the preexisting condition of her shoulder, the risk of dislocation was personal to her and her injury is thereby rendered noncompensable under the Act.

An injury is accidental within the Act if a workman's physical structure, whatever it may be, gives way under the stress of one's usual labor, and claimants can recover on their own testimony without corroboration. (*Atlantic & Pacific Tea Co. v. Industrial Com.* (1977), 67 Ill. 2d 137.) Certainly Miss Bond's testimony traced the occurrence to a definite time, place and cause (*Westinghouse Electric Co. v. Industrial Com.* (1976), 64 Ill. 2d 244, 249) and, as it was uncontradicted, it is sufficient to support a finding of accidental injury even absent any "bumping" of her shoulder. (See also *International Vermiculite Co. v. Industrial Com.* (1979), 77 Ill. 2d 1, 3.) It is also clear that Miss Bonds was in the course of her employment when the injury occurred.

The employer correctly argues, however, that because

she had dislocated her shoulder before and was subject to repeated subluxations (where the shoulder partially came out but did not dislocate) prior to the incident at issue, her injury was a result of normal activity rather than a risk incidental to her employment. The surgeon indicated that any episode of minor trauma—reaching for a cigarette or combing hair or turning over in bed while asleep—could have caused her shoulder to dislocate and that her shoulder was a "time bomb" which would go off at an unpredictable time.

In *Board of Trustees v. Industrial Com.* (1969), 44 Ill. 2d 207, a claimant preparing materials for class in accordance with his duties as a teaching assistant, turned in his chair upon hearing a noise, heard his back "snap," and thereafter had difficulty walking due to a ruptured disc. Although the Commission affirmed an award, the circuit court reversed and this court affirmed the circuit court's denial of an award, stating:

> "[T]here must be a showing that an injury, to be considered compensable, was due to a cause connected with the employment or incidental to it. There is no evidence here of a causal connection between the appellant's employment and the injury. The appellant simply turned in his chair and suffered injury. There was no suggestion that the chair was defective or unusual in any way. The medical evidence was that because of its degenerated condition any simple and normal activity would have caused the appellant's disc to rupture. The injury was not caused by a risk incidental to the employment. [Citation.]" (*Board of Trustees v. Industrial Com.* (1969), 44 Ill. 2d 207, 214-15).

Similarly, in *County of Cook v. Industrial Com.* (1977), 68 Ill. 2d 24, a woman arising from her desk to go to lunch suffered a stroke and permanent paralysis. Despite medical testimony that pressure caused by getting out of her chair might have precipitated the stroke and that

her job of lifting heavy books might have tended to weaken her heart, she was denied compensation because she was equally exposed to danger apart from her employment (68 Ill. 2d 24, 29). Thus more is required than the fact of an occurrence at the employee's place of work. *Smith's Transfer Corp. v. Industrial Com.* (1979), 76 Ill. 2d 338, 350-52.

The instant case is analogous to these cases because claimant's doctor testified that her shoulder was a "time bomb" that could go off at any time and that any normal activity would have precipitated its dislocation. The employer, therefore, merely provided the occasion for its occurrence and did not cause it in any way. Completely absent from the record is any evidence that claimant's work (1) further deteriorated her shoulder, (2) aggravated it, (3) precipitated its dislocation, or (4) accelerated the occasion for its dislocation. (See 1 A. Larson, Workmen's Compensation sec. 12.20, and cases therein cited (1978).) There is, in short, no indication from the record that, but for her employment, her shoulder would "have gone on functioning reasonably well for an indefinite time" (1 A. Larson, Workmen's Compensation sec. 12.20, at 3—310 (1978).)

We have previously approved compensation awards where there was evidence that the employment caused the injury (*Memorial Medical Center v. Industrial Com.* (1978), 72 Ill. 2d 275, 278) even if that evidence was controverted (*Ferrin Cooperative Equity Exchange v. Industrial Com.* (1976), 64 Ill. 2d 445, 447-49). But claimants have the burden of proof on all of the elements establishing their right to compensation (*Deere & Co. v. Industrial Com.* (1970), 47 Ill. 2d 144, 148), and because neither qualitative nor quantitative risks to the claimant were shown to be greater as a result of her employment, the Commission's determination that this injury arose out of her employment was contrary to the manifest weight of the evidence. For this reason, we do not have to

consider claimant's cross-appeal on the Commission's decision regarding the existence of permanent disability.

*Judgment reversed;*
*award set aside.*