(No. 53626

GOLDBLATT BROTHERS, INC., Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Walter Henning *et al.,* Appellees).

*Opinion filed May 22, 1981.*

Discipio, Martay & Caruso, of Chicago (Francis M. Discipio, of counsel), for appellant.

Thomas G. Cronin, of Chicago, for appellees.

MR. JUSTICE MORAN delivered the opinion of the court:

The employer, Goldblatt Brothers, Inc., appeals from an order of the circuit court of Cook County which confirmed the Industrial Commission's award of compensation to claimant, Walter Henning. The Commission, in adopting the arbitrator's recommendation, determined

that the claimant had sustained accidental injuries arising out of and in the course of his employment, and that such injuries resulted in the permanent and complete loss of the use of the right arm to the extent of 100% thereof. It also determined that this loss, in conjunction with claimant's previously sustained permanent and complete loss of sight of the left eye, constituted total and permanent disability of claimant. As a result, the Commission held that claimant was entitled to receive from the employer the sum of $185.33 per week for 235 weeks. In addition, claimant was awarded $185.33 per week for life commencing December 18, 1980, to be paid by the State Treasurer as *ex-officio* custodian of the Second Injury Fund.

The employer asserts that claimant failed to establish a causal connection between the accident and his present condition, that the claimant's disability was totally due to a preexisting degenerative disease, and that, therefore, the award of compensation was contrary to the manifest weight of the evidence.

The claimant was employed by Goldblatt Brothers, Inc., to load warehouse merchandise on trailers for customer delivery. On June 10, 1976, claimant was loading a 300-pound sofa when it fell on his right shoulder, knocking him to the concrete floor. Claimant testified that immediately after the accident he noticed an inability to move his right arm and neck. That same day, claimant went to the Kildare Clinic, where he was examined, X-rayed, and told to go home for the rest of the day. Records from the Kildare Clinic introduced by the employer disclose: "Pt. fell backwards injuring rt. shoulder. Contusion to right shoulder blade. Pt. has muscle weakness to entire arm (including shoulder girdle) atrophy." Claimant testified that on the following day he experienced pain in his neck, right shoulder, and right arm. He was unable to move his right arm. He returned to work that day but did no loading. He "just checked merchandise

off with [his] left hand." He continued to work "checking merchandise" through June 25. He stated that during this period he had a pain in his neck and his right shoulder and that his right arm "would just hang there."

On June 15, 1976, claimant went to Dr. Oscar M. Simon's clinic, where he was examined by Dr. Aurora Augustani, who referred him to Dr. Ben Lichtenstein, a neurologist. Ten days later, claimant was examined by Dr. Lichtenstein, who admitted him to St. Joseph Hospital on June 27. Surgery (cervical myelogram and cervical laminectomy) was performed on claimant's neck by a neurosurgical consultant, Dr. Amador. Claimant was released after 27 days of hospitalization but continued to experience pain in the neck and right shoulder. He claimed that his "arm still hung" and that his right leg "was dragging."

Claimant also testified that he had bumped his right shoulder in a trailer 10 years before the incident in question. The shoulder was X-rayed at Kildare Clinic and no damage was found. Claimant suffered no problem until 1975, when he strained his right arm while loading a sofa into a trailer. He testified, "after that to comb my hair was a little trouble." He stated that he had no trouble loading trailers before the June 10, 1976, accident.

Dr. Robert C. Busch, who examined claimant on April 22, 1977, was called as a witness for claimant. In response to a hypothetical question, Dr. Busch stated that in his opinion "there could or might be a causal connection between the accident which was described and the patient's condition." He also stated that if claimant had a prior limitation of the right arm before the injury, the trauma could have served to increase the limitation.

Dr. Oscar M. Simon testified on behalf of the employer. He testified that, in the four-month period prior to the accident in question, claimant had been treated by the clinic on three occasions for unrelated problems. The

clinic records for these occasions showed no complaints relating to claimant's right arm or leg. The record for June 10, 1976, the date of the accident, indicates, "atrophic muscular area, upper deltoid right arm, unable to adduct arm and unable to flex elbow. Weak hand grip, right."

Dr. Ben Lichtenstein, a specialist in neurology and psychiatry, testified on behalf of the employer. He diagnosed claimant's condition, on the basis of his workup and his knowledge of the claimant's surgery, as "compression of the cervical myelopathy secondary to cervical spondylosis *** which means a degeneration of the spine ***. In layman's terms *** a particular type of arthritis in which the discs are degenerated, compressed on the cord ***." Dr. Lichtenstein stated that in his opinion the claimant's fall had no significance to the course of his illness, in that the condition described was progressive.

On review before the Industrial Commission, the employer introduced medical reports of Dr. Marshall I. Matz, a neurosurgeon, and Dr. Ben B. Camacho. Dr. Matz reported that, based on his examination, claimant's history "is indicative of pre-existent cervical spinal cord compression." Dr. Camacho's report dated May 16, 1979, states:

> "Today's examination does show that this man is unable to actively use his right upper limb. However, the condition of ill-being that produced the condition appears to be of long standing; namely, the x-ray findings as well as the atrophic changes, which was already noted shortly after the accident."

At this same hearing, claimant introduced the June 13, 1979, medical report of Dr. I. Joshua Speigel, an examining neurosurgeon, which states in part:

> "It is my carefully considered opinion therefore that *** the incident of trauma of June 10, 1976 superimposed upon a previously existing condition of cervical spondylosis and narrowing of the cervical spinal canal is the immediate cause for his current total incapacity."

Proof of the existence of a preexisting condition will not necessarily bar an employee's claim for compensation. The employee will be entitled to compensation if he sustains an accidental injury which aggravates a preexisting diseased condition. Moreover, the accident need not be the sole causative factor in bringing about the employee's disability. *County of Cook v. Industrial Com.* (1977), 68 Ill. 2d 24, 29.

The employer argues that the testimony and medical evidence introduced prove that the claimant suffered from a progressive degenerative condition of the cervical spine that predated the instant accident. The employer relies on the medical testimony of Dr. Lichtenstein as proof that the claimant's present condition was not caused or aggravated by the accident and that the preexisting degenerative condition was the sole causative factor to which his present condition is attributable. We note, however, that there was conflicting medical testimony introduced on this very point. Both Dr. Speigel and Dr. Busch were of the opinion that the accident did or could have caused the claimant's total and permanent condition. Moreover, a causal connection between the claimed injury and an accident may be established by a chain of events showing that prior to the accident the employee was fully capable of performing manual job tasks and that immediately after the accident such ability was diminished. (*Pulliam Masonry v. Industrial Com.* (1979), 77 Ill. 2d 469, 471; *Union Starch & Refining Co. v. Industrial Com.* (1967), 37 Ill. 2d 139, 143.) In the present case, it is uncontroverted that the claimant had routinely performed his manual duties of lifting heavy items of merchandise and loading such into delivery trailers up to the moment of the accident. It is also uncontroverted that he was unable to resume such manual tasks after the accident. Where, as here, the evidence is conflicting on the issue of causation, it becomes the unique province of the Industrial Commission to

resolve such conflicts, and its decision will not be set aside unless contrary to the manifest weight of the evidence. (*Westinghouse Electric Co. v. Industrial Com.* (1976), 64 Ill. 2d 244, 251.) After a review of the record, we find that there was sufficient evidence to allow the Commission to resolve the conflict in the evidence in favor of claimant, and by doing so its decision was not against the manifest weight of the evidence.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*