(No. 57109.— )

## THE BOARD OF EDUCATION OF THE CITY OF CHICAGO, Appellant, v. THE INDUSTRIAL COMMISSION et al. (Mary E. Perry, Appellee).

*Opinion filed May 18, 1983.*

Patricia J. Whitten, of Chicago (William J. Quinlan and Robert A. Wolf, of counsel), for appellant.

Discipio, Martay & Caruso, of Chicago (Francis M. Discipio, of counsel), for appellee.

JUSTICE MORAN delivered the opinion of the court:

Petitioner, Mary E. Perry, sought compensation for the death of her husband, a window washer for the respondent employer, the Chicago board of education. The arbitrator found petitioner's husband had suffered an accidental injury arising out of and in the course of employment which contributed to his death. He awarded claimant $173.33 per week for life, $8,184.70 in medical expenses, and $1,750 for funeral expenses. The Industrial Commission affirmed and the circuit court of Cook County confirmed the decision. Respondent contends the Commission's decision is against the manifest weight of

the evidence.

On March 29, 1977, petitioner's decedent, Walter Perry, was assigned to wash windows with a co-worker at one of respondent's schools. To facilitate washing the first floor windows, two other employees removed several large protective wire screens from the window openings and leaned them against a fence. The screens were approximately four feet by eight feet in size and weighed 35 to 40 pounds each. Two of the screens, caught by a gust of wind, struck decedent, knocking him down with the screens landing on top of him.

A co-worker, Bryon Granville, testified that while on a ladder he heard a scream. He turned and saw Perry's head on the pavement and a ladder under his legs. Perry was holding his shoulder and the right side of his head. When decedent removed his hand from his face, Granville stated his face was red. Another of respondent's employees testified he saw one of the screens strike Perry, but did not see him fall. This employee said he had had coffee earlier that morning with decedent and that at that time he appeared sluggish and more pale than usual.

Decedent was taken to a hospital emergency room and X rays of his shoulder were taken. There was no mention in the hospital record of a head injury. He returned to the school that afternoon, signed an accident report, and then drove home. There was no mention in the accident report of a head injury.

Petitioner and her daughter, who both lived with decedent, testified he was physically and mentally active prior to March 29, 1977, often engaging in bicycle riding, skateboard riding, basketball, hunting, fishing and football with his daughter and grandson. He also performed general tasks around the home. However, after the accident, he became forgetful, staggered and stumbled while walking, occasionally grabbed his head and

grimaced as if in pain and no longer engaged in sports or other activities.

Granville also testified to changes in decedent's condition after the accident. He said when Perry returned to work he appeared pale, forgetful, and weak and his hands would shake; that during lunch breaks Perry would fall asleep; that he would often return to rewash the same windows; and that he would fail to completely wash other windows. He indicated their work output dropped from approximately 50 windows per day prior to the accident, to about 25 to 30 thereafter. Granville also stated Perry appeared off balance, nervous and shaky and that he stumbled and nearly fell while walking on occasion. Because of this, Granville no longer permitted decedent to climb ladders.

On August 25, 1977, Granville heard a noise from a classroom in which Perry was working. He found him lying on the floor holding the right side of his head and crying. Perry told him he had fallen off the 2½- to 3-foot heating vent which window washers customarily stood on to wash the windows. Decedent left the school shortly thereafter and never returned to work.

On September 1, 1977, Perry's physician tentatively diagnosed an "intracranial lesion, probable space occupied" on the right side of Perry's head. In October, Perry underwent a craniotomy, and a malignant brain tumor was found on the right side of his brain. He remained hospitalized from this time until his demise in March of 1978.

Perry's attending physician testified neither the March 29 nor the August 25 accidents caused the tumor *per se*. He asserted there was no way to pinpoint exactly how long or if the tumor had existed prior to March 29, 1977, primarily because he had not examined Perry until September 1, 1977. However, in response to a hypothetical question, he indicated a bump on the head could

cause hemorrhage into a brain tumor which could aggravate it. In his opinion, it would be medically significant if an individual who was symptom free prior to head trauma became symptomatic after the incident. He admitted he found no hemorrhage during Perry's craniotomy, but stated that sufficient time had elapsed for any hemorrhage to be absorbed and no special effort was made to determine whether there was evidence of an old hemorrhage. He noted some edema at the time of surgery, but attributed it to the tumor itself. However, he thought it was possible the fall in August might have brought about the edema.

Respondent's physician testified neither of the accidents was related to Perry's death. He said decedent's symptoms fit the natural progression of such a tumor's growth. However, he admitted that trauma to the area of a brain tumor might aggravate the condition and stated that immediate signs and symptoms following the trauma could be significant evidence of aggravation.

Respondent acknowledges aggravation of a preexisting condition may be compensable but argues the aggravation must be traceable to a definite time, place and cause. (*International Harvester Co. v. Industrial Com.* (1973), 56 Ill. 2d 84, 89.) Respondent maintains there is no evidence in the instant case of a preexisting brain tumor or a head injury aggravating the tumor.

While there is no direct testimony decedent struck his head on the pavement, the Commission inferred, primarily from Granville's testimony, that he did sustain a head injury in the March 29, 1977, accident. It is well established that "[t]he Commission is entitled to draw reasonable inferences from both direct and circumstantial evidence" (*County of Cook v. Industrial Com.* (1977), 69 Ill. 2d 10, 19), and this court will not set aside the Commission's decision or disregard permissible inferences merely because other inferences could be drawn (*Spector*

*Freight System, Inc. v. Industrial Com.* (1983), 93 Ill. 2d 507, 515). It is the Commission's function to resolve disputed questions of fact and evidentiary conflicts, and the Commission's findings must be upheld unless contrary to the manifest weight of the evidence. *Spector Freight System, Inc. v. Industrial Com.* (1983), 93 Ill. 2d 507, 514.

It is undisputed that at least one heavy screen struck and knocked decedent to the pavement. Given this fact and Granville's testimony, we cannot say the Commission's inference that Perry sustained a head injury in the March 1977 accident is against the manifest weight of the evidence.

The record reveals no direct medical evidence establishing Perry had a brain tumor prior to the March 1977 injury. However, the evidence does show that he enjoyed relatively good health and was active both physically and mentally right up to the date of injury. Immediately thereafter, however, his ability to work and his physical and mental condition deteriorated.

Proof of good health prior to an accidental injury, and a subsequent condition of ill-being which develops immediately after the accident, create an issue of fact as to the causal relationship between the injury and the condition of ill-being. (*Brooks v. Industrial Com.* (1979), 78 Ill. 2d 150, 154-55. See *Spector Freight System, Inc. v. Industrial Com.* (1983), 93 Ill. 2d 507, 513-14; *Dixon v. Industrial Com.* (1975), 60 Ill. 2d 126, 131; *Board of Education v. Industrial Com.* (1974), 57 Ill. 2d 307, 311; *Macon County Coal Co. v. Industrial Com.* (1940), 374 Ill. 219, 224; *Ralph H. Simpson Co. v. Industrial Com.* (1929), 337 Ill. 454, 459.) Whether a claimant's disability is attributed to a degenerative condition or, because of an accident, to an aggravation or acceleration of a preexisting condition is a question of fact to be decided by the Industrial Commission. (*Azzarelli Construction Co.*

*v. Industrial Com.* (1981), 84 Ill. 2d 262, 266.) This court has said that the Commission's finding on this issue should be given substantial deference because of the expertise acquired by the Commission in this area. (*Long v. Industrial Com.* (1979), 76 Ill. 2d 561, 566.) And, "[i]f the injury is a contributing factor, compensation will be allowed even if natural degenerative change or other factors *** contributed to claimant's disability." *Azzarelli Construction Co. v. Industrial Com.* (1981), 84 Ill. 2d 262, 267.

In the instant case, both doctors testified immediate signs and symptoms following head trauma could be significant. Furthermore, there was ample testimony establishing Perry's immediate and progressive deterioration. Under these circumstances, the Commission could well have drawn a permissible inference that there was a causal relation between Perry's March 1977 injury, his progressive deterioration, and his ultimate death. We cannot say the Commission's decision was against the manifest weight of the evidence. Accordingly, the judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*