PEORIA COUNTY BELWOOD NURSING HOME, Appellant, v. THE IN-
DUSTRIAL COMMISSION *et al.*, (Wanda J. Cagle, Appellees).

Third District (Industrial Commission Division)   No. 3—84—0096WC

Opinion filed October 10, 1985.—Rehearing denied December 31, 1985.

Robert E. Nesemann, of Heyl, Royster, Voelker & Allen, of Peoria, for appellant.

John Lesaganich, of Goldfine & Bowles, P.C., of Peoria, for appellee.

JUSTICE BARRY delivered the opinion of the court:

■ The critical issue in this appeal is whether an injury sustained as the result of work-related repetitive trauma is compensable under the Workers' Compensation Act absent one precise, identifiable incident which a court may label an "accident." Based upon the purpose of the Workers' Compensation Act (Ill. Rev. Stat. 1983, ch. 48, par. 138.1 *et seq.*) (hereafter the Act) and recognizing the new and changing nature of the employment environment, we hold that such injuries, when the claimant's burden of proof has been met, are compensable under the Act.

We emphasize initially that our decision encompasses only work-related injuries. Our holding today does not alter the present case law regarding pre-existing, non-work-related injuries. We do not intend to change hereby the basic principles set forth in *Lyons v. Industrial Com.* (1983), 96 Ill. 2d 198, 449 N.E.2d 1323, *Greater Peoria Mass Transit District v. Industrial Com.* (1980), 81 Ill. 2d 38, 405 N.E.2d 796, *Lambert v. Industrial Com.* (1980), 79 Ill. 2d 243, 402 N.E.2d 617, and *Bunney v. Industrial Com.* (1979), 75 Ill. 2d 413, 389 N.E.2d 536. Further, to the extent that these and other cases involve injuries or disease not related to the employees' employment, these cases are not germane to the cause at bar. There was no evidence that the claimant suffered from a non-work-related injury or illness.

This appeal is brought by the claimant's employer, Peoria County Belwood Nursing Home (hereafter Belwood). The claimant, Wanda

Cagle, filed a claim for compensation under the Act on August 24, 1979. The claimant alleged that she developed carpal tunnel syndrome in her left wrist in the course of her job in the laundry room of Belwood. She had been employed by Belwood for 12 years. She worked in the laundry room for the six years prior to her injury. Her duties in the laundry room consisted of sorting laundry and loading the laundry into two 200-pound capacity washing machines. Each machine was operated six times a day and was loaded by operating a spring-loaded door into each of three compartments. She was also required to carry laundry bags weighing from 25 to 50 pounds.

The claimant initially identified the date of her injury as October 5, 1976. At trial, she testified that she noticed pain, numbness and tingling for a substantial period of time prior to October 5. Her testimony was confused as to exactly how long she experienced symptoms, but she did experience symptoms on October 4, 1976. On October 5, 1976, she consulted Dr. McLean, a neurologist, regarding her symptoms. She continued to work until August 23, 1977, when she underwent outpatient surgery for carpal tunnel syndrome.

Based on this evidence, the arbitrator amended the application for benefits to reflect a date of injury of October 4, 1976. The arbitrator awarded benefits for temporary total disability and for 25% permanent total disability. The Industrial Commission affirmed the award. The circuit court of Peoria County confirmed the Commission's decision. Belwood brings the instant appeal.

Belwood raises two interrelated issues. It asserts, first, that the Industrial Commission's finding that the claimant sustained an accidental injury is contrary to the manifest weight of the evidence. In a related argument, the employer asserts that the claim for benefits is barred by the statute of limitations.

The arbitrator and Commission found that the claimant had sustained an accidental injury as a result of repeated trauma to her wrist in operating the two large washing machines. The employer argues that because there was no specific incident by which the claimant's injury could be traced to a definite time, place and cause, the injury was not an "accidental injury" under the Act. The Commission's finding that the claimant suffered an "accidental injury" is, according to Belwood, contrary to the manifest weight of the evidence.

The crux of this issue, then, is what constitutes an "accidental injury" under the Act. The Illinois Supreme Court has held that an injury is "accidental" within the meaning of the Act if it is traceable to a definite time, place and cause. (*International Harvester Co. v. Industrial Com.* (1973), 56 Ill. 2d 84, 305 N.E.2d 529.) The employee in *International Harvester* developed emphysema as a result of his employ-

ment. Barred from recovery under the Workmen's Occupational Diseases Act, the employee sought recovery under the Workmen's Compensation Act. The Illinois Supreme Court noted that aggravation of a pre-existing disease was compensable under the Act where the "employee's existing physical structure, whatever it may be, gives way under the stress of his usual labor and he is suddenly disabled." (56 Ill. 2d 84, 90, 305 N.E.2d 529, 533.) The court thus reasoned that either the cause or the effect of the aggravation of disease must be traceable to a specific time, place and cause in order for an employee to recover under the Act.

The court in *International Harvester* observed that the Act and the Workmen's Occupational Diseases Act are complimentary. Indeed, a claim submitted under one statute may be considered under the other if the facts of the case demonstrate that the other is the more appropriate law. Following the decision in *International Harvester*, the Workmen's Occupational Diseases Act was amended to provide recovery for disease arising out of repeated exposure. The legislature thereby nullified the rule in *International Harvester* that the aggravation of a pre-existing *disease* must be traceable to a specific time, place and cause. The legislature has obviously seen no need to address the question of whether a physical *injury* must be similarly traced. The Illinois courts, however, have retained the definition of "accidental" in *International Harvester* in resolving claims brought under the Act for work-related physical injury.

The requirement that an accidental injury be traceable to a definite time, place and cause was reiterated in *General Electric Co. v. Industrial Com.* (1982), 89 Ill. 2d 432, 433 N.E.2d 671. The claimant in *General Electric* sought compensation for carpal tunnel syndrome sustained as the result of work-related repetitive trauma. General Electric argued that there was no accidental injury because the claimant's injury was not traceable to a definite time, place and cause. The supreme court held that the claimant sustained an accidental injury despite the fact that the injury was the result of repeated trauma because there was a precise identifiable incident in which her physical structure gave way under the stress of her usual work tasks.

Thus, the rule has evolved that in order to demonstrate an "accidental injury," a claimant must trace the injury either to a specific accident identifiable as to time and place or to the specific moment of collapse of one's physical structure, identifiable as to time and place. Under the present interpretation of the Act, it is not sufficient for a claimant to show that a bodily structure eroded over time to the point of uselessness as a result of employment. Instead, a claimant must demonstrate a precise moment of collapse and dysfunction.

We consider the implication of this rule for all of the employees, factory workers, supervisors, managers, secretaries, salespeople and others, working in Illinois in this technological age. In real life, the erosion of a bodily structure to the point of uselessness translates into arms that cannot lift, legs that cannot walk, knees that cannot bend, lungs that cannot breathe, and eyes chronically irritated or worse. But evidence of such work-related injuries alone is not sufficient under the prior interpretations of "accidental injury." Instead, useless limbs, damaged organs and disabled bodies must be pushed to a precise moment of collapse and dysfunction. Then, and only then, according to these interpretations, may a court of this State find an employee eligible for compensation under the Act.

The time has come to abandon an interpretation of "accidental" which fails to address documentable and medically recognizable risks faced by the individuals in connection with their employment. The risk of injury from repeated trauma and exposure endured by truck drivers, CRT operators, chemists and others must be recognized. The judicial interpretation of "accident" must be refined to reflect the purpose of the Act and the reality of employees obligated to perform repetitive tasks.

The purpose of the Act is that the burdens of caring for the casualties of industry be borne by industry and not the employees or the public. (*Petrazelli v. Propper* (1951), 409 Ill. 365, 99 N.E.2d 140.) The primary objective of the Act is to afford employees and their dependents a measure of financial protection while eliminating the vast costs of tens of thousands of potential common law actions filed against employers. (*Baker & Conrad, Inc. v. Chicago Heights Construction Co.* (1936), 364 Ill. 386, 4 N.E.2d 953.) The Act represents the exchange of previously existing common law rights and remedies between employers and employee. (*Alton v. Byerly Aviation, Inc.* (1977), 68 Ill. 2d 19, 368 N.E.2d 922.) In construing the Act, courts must give its provisions the practical and liberal interpretation intended by the legislature. (*K. & R. Delivery, Inc. v. Industrial Com.* (1957), 11 Ill. 2d 441, 143 N.E.2d 56.) As was said in *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 181, 384 N.E.2d 353, 357, the Act is a humane law of remedial nature.

Like the courts of Illinois, the Supreme Court of Ohio had historically interpreted the term "accidental" in its worker's compensation statute (Ohio Rev. Code Ann. sec. 4123.01(C) (1980)) to require a showing of a sudden mishap occurring at a particular time and place. In *Village v. General Motors Corp.* (Ohio 1984), 15 Ohio St. 3d 129, 472 N.E.2d 1079, the court noted that its efforts to define "accidental" had resulted in a tortuous line of cases, culminating in holdings that disabilities which developed over time were not compensable because they

lacked the essential features of suddenness, unexpectedness and unforeseeability. The *Village* court rejected these holdings, finding that the distinction between gradual and abrupt causation frustrated the clear purpose of the statute, which was to compensate workers injured as a result of the requirements of their employment.

In his concurring opinion, Justice Holmes acknowledged that difficult questions would be presented in the application of the *Village* decision. He noted, however, that it remained the claimant's burden to establish that his injury was caused by a "working condition with a definite time span." 15 Ohio St. 3d 129, 135, 472 N.E.2d 1079, 1084.

We concede that similar issues of law and fact will arise because we today recognize gradual injury due to repetitive trauma as compensable under the Act. However, as Justice Holmes also noted, a claimant must fulfill his obligation of proof and show that his injury is work-related and not the product of the aging process.

An employee alleging injury based on repetitive trauma must meet the same standard of proof as claimants alleging a single, definable accident. The difficulty in proving that injury resulting from repeated trauma arose out of and in the course of employment will pose a serious burden for a claimant. The difficulty of resolving any such issues should not prevent this court, like Ohio, from considering just compensation for all employees so injured.

The Illinois Supreme Court has noted that the word "accident" is not a technical legal term. (*E. Baggot Co. v. Industrial Com.* (1919), 290 Ill. 530, 125 N.E.2d 254.) Indeed, the word "accidental", as used in the Act, "is a comprehensive term almost without boundaries in meaning as related to some untoward event." *Ervin v. Industrial Com.* (1936), 364 Ill. 56, 60, 4 N.E.2d 22, 24.

Like the Ohio court in *Village*, this court finds that an employee may be "accidentally injured" under the Act as the result of repetitive, work-related trauma even absent a final, identifiable episode of collapse. We reject an interpretation of "accidental" which forces injured employees needing the protection of the Act to choose between foregoing that protection, "creating" one identifiable incident, or pushing their now-injured bodies to the point of collapse or dysfunction. The elimination of this too narrow definition of "accidental injury" will effectuate the purpose of the Act and provide equal protection for all manner of employees of this State.

■ Absent the narrow construction of "accident" in the case at bar, the evidence was sufficient to prove that the claimant sustained an accidental injury arising out of and in the course of her employment. Although the date of injury alleged by the claimant differed from the date of injury assigned by the arbitrator, the claimant established by

her testimony that she was injured during her employment. (See generally *Interlake Steel Co. v. Industrial Com.* (1985), 136 Ill. App. 3d 740.) The claimant testified that she experienced pain and tingling in her left arm. While she worked a regular work schedule on October 4, on October 5, she informed her physician that she experienced extreme difficulty in gripping the washer doors due to the severity of her symptoms. Both the claimant and Dr. Rivero related the symptoms to her employment. The medical testimony as to the claimant's condition was uncontroverted. We find that the claimant proved that she sustained an "accidental injury" under the Act.

Because we so find, we must now consider whether the claim was timely filed. Belwood argues that the claim is barred by the statute of limitations.

Section 6(c)(2) of the Act provides, in relevant part, that a claim for compensation must be filed within three years after the date of the accident. (Ill. Rev. Stat. 1975, ch. 48, par. 138.6(c)(2).) To determine whether the filing of the claim was timely, we must first determine the date of the claimant's accident.

Professor Larson suggests that the date of an "accident" in cases of repetitive trauma be defined as "the date on which the disability manifests itself." (1B Larson, Workmen's Compensation sec. 39.50 (1985).) The Supreme Court of Maine utilized this definition to determine when a worker was disabled by carpal tunnel syndrome in *Ross v. Oxford Paper Co.* (Me. 1976), 363 A.2d 712. The employee Ross had received treatment from the employer's first aid department over a period of years for continuing numbness in his hands. Finally, on March 17, 1974, the worker was no longer able to perform his job and ceased working. The court in *Ross*, relying on the rule set forth in Larson's treatise, fixed the date of disability at March 17, 1974.

Two alternative criteria are set forth by Larson for fixing the date when the injury manifests itself. The first is the time at which the employee can no longer perform his job. Inability to perform one's work was the criteria used in *Ross*.

The alternate criteria set forth by Larson is the onset of pain which necessitates medical attention. In *Consolidated Gas Utilities Corp. v. Jeter* (Okla. 1951), 238 P.2d 804, the claimant's injury resulted from repeatedly striking her keypunch keyboard with her fingers. On December 27, 1950, she notified her employer that she was experiencing pain in her fingers because of an unusually heavy workload. She then sought medical treatment. She continued to work for several weeks. The supreme court of Oklahoma fixed the date of the claimant's injury as December 27, the day she experienced pain sufficiently intense to cause her to seek medical care.

■ We adopt the rule propounded by Larson and find that where an employee in Illinois suffers a work-related injury due to repeated trauma, the date of the accidental injury is the date on which the injury "manifests" itself. Manifest means to show plainly or make palpably evident. (Webster's Third New International Dictionary 1375 (1971).) We further find that an injury has manifested itself when both the fact of the injury and the causal relationship between the injury and the employment are plainly evident.

The time at which both the fact of the injury and the causal relationship became plainly evident will be a question of fact. The claimant may demonstrate the manifestation of the injury with divers facts. The criteria suggested by Larson, the onset of pain and the inability to perform one's job, are among the facts which may be introduced to establish the date of injury.

■ In sum, in the instant case the claimant experienced symptoms on October 4, 1976. On October 5, 1976, she sought medical attention, at which time the doctor confirmed that her injury was caused by the conditions of her employment. Thus, the arbitrator correctly set forth the date of the claimant's injury as October 4, 1976, the last day on which she worked before the fact of the injury and the causal connection became apparent. On that date, both the fact of her injury and the causal relationship were plainly evident. The claimant filed her application of claim on August 24, 1979. The claim for benefits under the Act was, therefore, filed within the three-year statute of limitations.

The claimant was awarded benefits by the arbitrator and the Commission. The award of benefits was confirmed by the circuit court. We affirm the judgment of the circuit court of Peoria County.

Affirmed.

McNAMARA and KASSERMAN, JJ., concur.

PRESIDING JUSTICE WEBBER, dissenting:

I respectfully dissent from the principal opinion and suggest that it represents a usurpation of the legislative prerogative and purports to overrule many holdings of our supreme court while at the same time paying lip service to them.

A closer analysis of some of those opinions, as well as other holdings of the supreme court, is instructive.

The leading case in this State on the subject of repeated trauma is *International Harvester*, cited in the principal opinion. In that case the court considered whether repeated exposure to noxious fumes from a welding operation which gave rise to pulmonary emphysema was com-

pensable under the Workers' Compensation Act. The court held it was not compensable.

The court first rejected the claim under the Workmen's Occupational Diseases Act (Ill. Rev. Stat. 1959, ch. 48, par. 172.36 *et seq.*), holding that emphysema was a general disease of life. With the 1975 amendments to that Act, especially the definitions of "occupational disease" and "disablement," it is improbable that the court would reach such a result today.

The court exhaustively reviewed prior authority and came to the conclusion that no award could be made under the Workers' Compensation Act because no accidental injury had occurred. The court defined such an injury, saying:

> "[A]n injury is accidental within the meaning of the Act when it is traceable to a definite time, place and cause and occurs in the course of employment unexpectedly and without affirmative act or design of the employee." *International Harvester Co. v. Industrial Com.* (1973), 56 Ill. 2d 84, 89, 305 N.E.2d 529.

In cases decided since *International Harvester*, the supreme court has held strictly to the definite-time-place-and-cause requirement.

In *Lawless v. Industrial Com.* (1983), 96 Ill. 2d 260, 449 N.E.2d 850, the claimant had previously been diagnosed as having a hernia but kept working until he had a specific episode of pain while on the job. There was medical testimony that the hernia developed gradually and not as a result of any one recent injury such as occurred on the day of the pain. The supreme court affirmed the decision of the Industrial Commission denying benefits, finding that the medical evidence indicated that the pain experienced by the claimant was not prompted or accelerated by any one specific accident but by accumulated stress over a period of time. The claimant did not sustain the burden of showing that his condition was in fact aggravated by his employment duties and that the aggravation was attributable to a specific time, place, and cause rather than the effect of prolonged stress on his body.

In *Lyons*, cited in the principal opinion, a bus driver with a preexisting back condition felt a "twinge" while loading freight but continued working for several days and did not report the accident immediately. The supreme court upheld the denial of benefits and the finding that no accident had occurred. There was no direct evidence of a lifting injury aside from plaintiff's own assertions; there was evidence of a preexisting condition which may not have been work-related and which supported a finding that the condition developed gradually over time.

In *Goldblatt Brothers, Inc. v. Industrial Com.* (1981), 85 Ill. 2d 172, 421 N.E.2d 909, defendant sought recovery for injuries sustained when a sofa he was loading fell on his shoulder, knocking him to the

floor. Some of the medical testimony indicated that the claimant had previously suffered from an arthritic condition which progressively deteriorated. The supreme court upheld an award under the Workers' Compensation Act, stating that proof of existence of a preexisting condition will not necessarily bar an employee's claim. It is enough if there is evidence supporting the inference that there was an accidental injury which aggravated a preexisting disease or condition, and the accident need not be the sole causative factor in bringing about the disability. The court stated further that a causal connection between a claimed injury and an accident may be established by a chain of events showing that prior to the accident the employee was fully capable of performing manual job tasks and that immediately after the accident such ability was diminished. See also *Board of Education v. Industrial Com.* (1983), 96 Ill. 2d 239, 449 N.E.2d 839.

In *Caterpillar Tractor Co. v. Industrial Com.* (1982), 92 Ill. 2d 30, 440 N.E.2d 861, the claimant had a preexisting rheumatoid arthritis condition and experienced a "stabbing pain" while lifting a 90-pound metal casting. The supreme court upheld the workers' compensation award and reiterated the rule that a preexisting condition does not bar recovery so long as the condition is aggravated or accelerated by a claimant's employment. The court noted a limitation to this rule, however, which denies recovery where a claimant's health has deteriorated to the point that any normal daily activity is an overexertion, or where activity engaged in on the job presents risks no greater than those to which the general public is exposed.

Thus, in *Greater Peoria Mass Transit District*, cited in the principal opinion, the court set aside an award where plaintiff dislocated her shoulder while she was merely reaching for an object in the course of her employment. The court found that the testimony was sufficient to trace the injury to a definite time, place, and cause, but found that because of her preexisting condition, the risk of dislocation was personal to the claimant. The court stated that the injury was the result of normal activity rather than a risk incidental to employment and likened the condition of the claimant's shoulder to a "time bomb" waiting to go off. See also *Board of Trustees v. Industrial Com.* (1969), 44 Ill. 2d 207, 254 N.E.2d 522.

In *Lambert*, cited in the principal opinion, the claimant had a long history of back problems and injured his back in a fall, which he reported to his supervisor, but did not request medical help and instead continued working for several months. The court upheld the decision denying benefits finding that the long-term effects of work-related stress on the claimant's back were not compensable under the Act since he did not show that his bodily structure gave way at a specific

place and time.

Finally, in *Bunney*, cited in the principal opinion, the claimant sought recovery under the Workers' Compensation Act and the Worker's Occupational Diseases Act on the theory that dust inhaled at the grain elevator where claimant worked aggravated his preexisting emphysema. The court reversed an award under the Worker's Occupational Diseases Act, finding that the mere showing that the condition was aggravated by claimant's employment was not sufficient to support an award prior to the 1975 amendment of the Act since emphysema was an "ordinary disease of life." The court also upheld the denial of benefits under the Workers' Compensation Act, finding that the case was virtually identical to *International Harvester* in that the claimant did not suffer a sudden disablement from the aggravation of his emphysema and his body structure did not suddenly give way; rather, claimant suffered from a gradually debilitative disease.

A review of these cases confirms that recovery under the Workers' Compensation Act will be allowed where a claimant suffers a sudden disablement or breakdown in his physical structure or where he can identify a particular and isolated injurious event which aggravates or accelerates a preexisting condition. The preexisting condition itself need not be caused solely by factors in the employee's work environment or by his work duties so long as the injurious event is a contributing cause of the physical breakdown. In contrast, where the manifestation of the injury or condition occurs gradually or is the result of prolonged stress or repeated exposure to work conditions, recovery will be denied. The supreme court has refused, most clearly in *International Harvester*, to apply the repeated-trauma theory to find that each exposure or impact is a separate accidental injury.

Three relatively recent supreme court decisions have dealt specifically with the carpal tunnel syndrome under circumstances much like the instant case. All of them relied upon the definite-time-place-and-cause requirement of *International Harvester*.

In *General Electric*, cited in the principal opinion, the claimant's work required her to pick up three-pound coils, place them in a processing machine, and then remove them when they weighed about seven pounds. One day she experienced a sharp pain in her wrist and reported to the nursing station. The argument was advanced that no definite time, place, or cause had been fixed, but the court rejected it, holding that the employer's own records established the accident date. This apparently was a reference to the records of the nursing station.

In *Johnson v. Industrial Com.* (1982), 89 Ill. 2d 438, 433 N.E.2d 649, the claimant worked for the same nursing home as in the case at bar, loading, transporting, and unloading a large food cart. She also

claimed carpal tunnel syndrome injury. However, the court held that none of the medical evidence established a causal connection between the claimant's work and her ailment.

In *Caterpillar Tractor Co. v. Industrial Com.* (1983), 98 Ill. 2d 400, 456 N.E.2d 1366, the claimant's testimony was in conflict as to when he first noticed carpal tunnel syndrome symptoms; furthermore, at no time did he inform his treating physicians that he suffered an injury on the job and made no mention of injury when filing group insurance forms. The supreme court said that the case was almost a replay of *Johnson* and found again that there was no evidence, medical or otherwise, of a connection between claimant's work duties and his ailment. The court noted that the accident date was stated in the application as January 14, 1977, but there was no indication in the record of any unusual occurrence on that date.

*General Electric* was distinguished on the basis that in the record there was a specific description of the employee's movements which supported an inference of repeated trauma appeared, together with a specific date after which she could no longer perform her job.

All of this authority reiterates and reemphasizes the rule of *International Harvester*: to be compensable under the Workers' Compensation Act, an injury must be accidental; to be accidental, an injury must be traceable to a definite time, place, and cause. The term "accidental injury" subsumes and encompasses a cause-and-effect analysis; the accident is viewed as the cause and the injury as the result. Therefore, most cases may be analyzed in terms of causation. This appeared to be the basis of decision in the three carpal tunnel syndrome cases described above. In *General Electric* the sudden sharp pain coupled with the medical evidence supported the Commission's determination of accident; the opposite situation obtained in *Johnson* and *Caterpillar*; there was insufficient evidence to support a finding of accident. Thus, the cause of the injury is much narrower in scope than that posited by the repeated-trauma theory. It is not impossible for repeated trauma to lead up to an accident, but the accident, itself, the cause of the injury, must be pinpointed by clear evidence; it is not sufficient that a bodily structure eroded to the point of uselessness; there must be a precise moment of collapse and dysfunction.

There are a number of practical reasons for the rule. An exact time, place, and cause may be necessary to determine which employer and which compensation insurance carrier are on the risk; whether any statutory amendments are applicable; and, as in the case at bar, whether any limitations problem exists.

In the instant case, there was insufficient evidence of accidental injury within the meaning of the rule discussed above. There was no

evidence of anything unusual happening on October 4, 1976. Claimant testified that she worked a regular day on that date. She continued to work following her visit to Dr. McLean up to the time of her surgery in August 1977. Dr. McLean in his deposition described the surgery as elective, claimant's condition not having deteriorated to the point at which it might be described otherwise.

Claimant's difficulty in establishing an accidental injury is demonstrated by a variety of factors in the record: (1) choosing October 5, 1976, a date upon which she did not work, as the date of the accident; (2) the backdating to October 4, 1976, by the arbitrator *sua sponte*; (3) the fact that the visits to Dr. McLean were not precipitated by any dramatic change in her condition, but were referrals by claimant's personal physician; (4) the claim that a report was made to the employer but no specific date was ever established as in *General Electric*; (5) the vagaries in claimant's testimony; (6) Dr. Rivero's report stating that claimant's condition resulted from her employment in contrast to Dr. McLean's deposition in which he stated that he did not know what caused claimant's symptoms; (7) the fact that Dr. Rivero had examined claimant for conditions in her right hand, while the instant litigation was over the left hand.

We are well aware of the deference due to a decision of the Industrial Commission by reviewing courts. However, in this case there is not a scintilla of evidence to establish that an accidental injury within the meaning of the rule occurred to claimant on October 4, 1976. Hence, the decision of the Commission is against the manifest weight of the evidence and should be reversed.

We are also aware that the Workers' Compensation Act and the Worker's Occupational Diseases Act are complementary (*International Harvester Co. v. Industrial Com.* (1973), 56 Ill. 2d 84, 305 N.E.2d 529), but that a dichotomy exists between them in the matter of a disabling condition which develops gradually. Prior to 1975, "occupational disease" was defined as:

"[A] disease arising out of and in the course of the employment. Ordinary diseases of life to which the general public is exposed outside of the employment shall not be compensable." (Ill. Rev. Stat. 1973, ch. 48, par. 172.36(d).)

"Disablement" was defined as:

"[T]he event of becoming disabled from earning full wages at the work in which the employee was engaged when last exposed to the hazards of the occupational disease by the employer from whom he claims compensation." Ill. Rev. Stat. 1973, ch. 48, par. 172.36(e).

"Occupational disease" is now defined as:

"[A] disease arising out of and in the course of the employment or which has become aggravated and rendered disabling as a result of the exposure of the employment. Such aggravation shall arise out of a risk peculiar to or increased by the employment and not common to the general public." (Ill. Rev. Stat. 1983, ch. 48, par. 172.36(d).)

Further, the term "disablement" as now defined means:

"[A]n impairment or partial impairment, temporary or permanent, in the function of the body or any of the members of the body, or the event of becoming disabled from earning full wages at the work in which the employee was engaged when last exposed to the hazards of the occupational disease by the employer from whom he or she claims compensation, or equal wages in other suitable employment." Ill. Rev. Stat. 1983, ch. 48, par. 172.36(e).

It can thus be seen that the legislature, in an apparent reaction to *International Harvester*, wrote the analogue of the repeated-trauma theory into the Worker's Occupational Diseases Act, but has not amended the Workers' Compensation Act accordingly, despite the numerous decisions of our supreme court following the definite-time-place-and-cause requirement.

This being the fact, I can find no sanction for the judicial legislation contained in the principal opinion.

The authorities cited from Ohio and Maine are not persuasive. Clearly they were decided under local statutes, and in any event by the court of highest resort in those jurisdictions.

I would reverse the order of the circuit court of Peoria County.

LINDBERG, J., joins in this dissent.

## SUPPLEMENTAL OPINION ON DENIAL OF REHEARING

JUSTICE BARRY delivered the opinion of the court:

Peoria County Belwood Nursing Home has filed a petition for rehearing, praying for reversal and, in the alternative, requesting a statement under Supreme Court Rule 315(a) that the instant case involves a substantial question which warrants consideration by the Supreme Court (94 Ill. 2d R. 315(a)). Belwood contends that this court's decision is erroneous as to the issues of whether the claimant's decision is erroneous as to the issues of whether the claimant sustained an accidental injury and whether the claim was filed under the Act within the appropriate statutory time limit.

■ We initially deny Belwood's petition for rehearing. This court acknowledged in its opinion that it was redefining the statutory lan-

guage "accidental" as found in the Act. We redefined "accidental" to encompass injury resulting from repetitive trauma in order to fulfill the statutory purpose of the Act. The failure to recast the meaning of the language of the Act would continue to leave such injured employees facing an intolerable dilemma: whether to forego compensation for injuries unquestionably work related, or to "create" single, identifiable moments of collapse and dysfunction in order to receive compensation. We prefer to redefine "accidental" to reflect the realities of the present work environment. The adversarial nature of the claim process and the necessary evidence of work relationship demanded ensures that claimants will be forced to meet their burden of proof when seeking compensation under the Act, as we have emphasized in our opinion.

■ Having established that the claimant in the cause at bar suffered an accidental injury, we reaffirm our finding that her claim was filed within the statutory time limit. Under our interpretation of "accidental," the fact that the claimant experienced symptoms prior to the date of her "accident" does not place her claim outside the statutory time limit. October 4, 1976, was the last day the claimant worked before she became aware of both the fact of her injury and the causal connection with her employment. Nothing presented by Belwood in its petition for rehearing persuades us that our decision was erroneous, either on the law, as stated in our opinion, or on the facts.

■ Finally, we grant Belwood's request for a statement under Supreme Court Rule 315(a) and declare that the instant case involves a substantial question which warrants consideration by the Supreme Court.

Petition for rehearing is denied; request for a statement under Supreme Court Rule 315(a) is granted.

McNAMARA and KASSERMAN, JJ., concur.

PRESIDING JUSTICE WEBBER concurring in part and dissenting:

I concur in the denial of rehearing and join in the request for a statement under Supreme Court Rule 315(a), 87 Ill. 2d R. 315(a).

However, I do not agree with all else stated in the supplemental opinion and elect to stand by my dissent in the principal opinion.

I join in Justice Lindberg's special concurrence in the denial of rehearing and joinder in the statement under Supreme Court Rule 315(a).

LINDBERG, J., joins in this concurrence and dissent.

JUSTICE LINDBERG, specially concurring in the denial of the petition for rehearing and joining in the statement that a substantial question exists:

I specially concur in the denial of the petition for rehearing and in the allowance of the petition for a statement that a substantial question exists which warrants consideration by the supreme court. I disagree with the reasoning of the supplemental opinion and adhere to the dissent to the principal opinion.

WEBBER, P.J., joins in this concurrence and dissent.