(No. 45891.—

THE BOARD OF EDUCATION OF THE CITY OF CHICAGO, Appellee, v. THE INDUSTRIAL COMMISSION *et al.*—(Sylvia Carioscia *et al.*, Appellants.)

*Opinion filed May 29, 1974.*

Salvatore J. Bongiorno and Jack L. Parrino, both of Chicago, for appellants.

Michael J. Murray, of Chicago (Richard E. Girard, John J. Dillon, and John L. Wren, of counsel), for appellee.

MR. JUSTICE RYAN delivered the opinion of the court:

This is a direct appeal from a decision of the circuit court of Cook County reversing an Industrial Commission award of death benefits to the widow and minor children of Peter Carioscia.

On July 12, 1967, Peter Carioscia, who was employed as a fireman by the Board of Education of the City of Chicago, was injured when he fell from a ladder 20 feet above the ground while cleaning a school boiler. He filed an application for adjustment of claim with the Industrial Commission and the arbitrator found that he was entitled to 8 5/7 weeks of benefits for temporary total incapacity for work. The arbitrator also found that Carioscia had failed to prove that he had suffered any permanent disability as a result of the fall. Carioscia filed a petition with the Industrial Commission to review this finding. However, he died on December 10, 1968, before the hearing could be held, and the matter was dismissed.

Sylvia Carioscia then filed this claim for death benefits under the Workmen's Compensation Act on behalf of herself and the decedent's two children. She alleged that her husband's death was caused by his fall. After a hearing

the arbitrator found in favor of the widow and minor children in the amount of the statutory death award. He also awarded the widow $750 for burial expenses and $15,209.89 for medical bills. The award was affirmed by the Industrial Commission but reversed by the Cook County circuit court as being contrary to the manifest weight of the evidence.

Two issues are presented here. The petitioner contends that the circuit court erred in reversing the award of the Commission because there was sufficient evidence from which the Commission could find that decedent's accident was a cause of his death. The school board urges the validity of the circuit court decision and also argues that the arbitrator's decision in the prior proceeding, that Carioscia was not permanently disabled by his fall, is *res judicata* as to whether the fall was a cause of his death.

Immediately after the accident on July 12, 1967, Carioscia was admitted to Augustana Hospital, where he remained until August 2. The hospital records show that when admitted Carioscia complained of pains in his spine, right thigh and elbow. He did not complain of head injuries and the records show that no such injuries were observable. However, on July 15, 1967, he complained to Dr. Ketteman, his family physician, of pains in his left ear and headaches. During this period of hospitalization Carioscia underwent a hernia operation. On August 2, he was discharged from the hospital. On August 25 Dr. Ketteman advised him that he could safely return to work, but he did not do so.

On September 9, 1967, while convalescing in his home, Carioscia lost consciousness and was again taken to Augustana Hospital. A neurosurgeon, Dr. Nilges, was called in for consultation by Dr. Ketteman. Dr. Nilges performed an arteriogram, which disclosed a large mass known as an arteriovenous angioma in the left parietal region of the brain. He was put on anticonvulsive drugs and was discharged on September 17.

On October 24, 1967, Carioscia returned to work for the first time since his accident. Upon returning from work that night he became dizzy and collapsed. On October 26 he again was admitted to Augustana Hospital. This third period of hospitalization lasted until November 11. On November 5 he was examined by another neurosurgeon, Dr. Ruge. Dr. Ruge determined that Carioscia was suffering from a congenital angioma.

During late January or early February of 1968, Carioscia returned to work. However, on March 9, 1968, he was readmitted to Augustana Hospital for treatment of head pains. He was treated with ice packs and medication until his release on March 21. At that time Dr. Nilges said there was nothing more he could do. He remained under the care of Dr. Ketteman and Dr. Cascino, a neurosurgeon.

In May of 1968 Carioscia again returned to work. He worked periodically until August 6, 1968, when he was again admitted to Augustana under Dr. Ketteman's care. He remained in the hospital for four days.

More hospital visits followed. On September 13 decedent was admitted to Resurrection Hospital. From September 16 to September 27 he was treated at St. Anne's Hospital. On October 8, 1968, he was readmitted to St. Anne's. Brain surgery was performed by Dr. Cascino on October 28, 1968. Decedent died on December 10, 1968, never having regained consciousness following the operation.

At the hearing on Sylvia Carioscia's claim for death benefits conflicting evidence was presented concerning the causal relation between Carioscia's fall on July 12, 1967, and his death more than one year later. Dr. Ruge testified that Carioscia suffered from a congenital arterial venous malformation in the left side of his brain. Dr. Ruge was of the opinion that this condition could not have been caused or aggravated by decedent's fall.

Dr. Cascino agreed that Carioscia suffered from a congenital arterial venous malformation. However, Dr.

Cascino stated that in his opinion the decedent's fall could have aggravated his condition and led to his death. He stated that prior to the fall an equilibrium had been reached between the abnormal blood vessel area and the rest of the brain. This equilibrium was, in Dr. Cascino's opinion, upset by the decedent's 20-foot fall. Dr. Cascino also stated that any sharp fall could have upset this equilibrium even if the decedent had not struck his head.

Dr. Ketteman, Carioscia's family physician since 1961, testified that Carioscia had been in good health prior to the accident and had never complained to him of any head condition.

In proceedings brought under the Workmen's Compensation Act it is the function of the Industrial Commission to resolve conflicts in medical evidence, and its decision should not be set aside unless it is contrary to the manifest weight of the evidence. *Saldana v. Industrial Com.*, 53 Ill.2d 222; *Hartwell v. Industrial Com.*, 51 Ill.2d 562; *Shell Oil Co. v. Industrial Com.*, 38 Ill.2d 286.

We are of the opinion that the decision of the Commission finding that Carioscia's death was caused by his fall was not contrary to the manifest weight of the evidence. The evidence clearly shows that immediately after his fall Carioscia developed head pains which continued until the time of his death. The fact that these medical problems developed immediately after his accident, together with Dr. Cascino's testimony that the fall upset the equilibrium established within his brain and could have caused his death, is sufficient evidence of a causal connection between the accident and Carioscia's death to support the finding of the Industrial Commission.

Recovery is not precluded by the fact that Carioscia's brain disorder was congenital in nature and existed at the time of the accident. "An employee is entitled to recover for all the consequences attributable to an aggravation of a pre-existing condition." (*Corn Products Co. v. Industrial Com.*, 51 Ill.2d 338, 340.) The evidence here fairly shows

that this accident aggravated a prior brain condition and led to the decedent's death. Furthermore, recovery is not to be denied simply because this accident would not have produced such drastic consequences if the preexisting condition had not been present. An employee injured in the course of his work may recover for such injuries even if the result would have been different had he been in normal health. *Bethlehem Steel Co. v. Industrial Com.*, 6 Ill.2d 290.

We must reject the Board's contention that the arbitrator's decision in the prior proceeding, brought by Carioscia himself, that he was not permanently disabled by his accident prohibits recovery in this action by his widow. Two causes of action are created by section 8 of the Workmen's Compensation Act (Ill. Rev. Stat. 1969, ch. 48, par. 138.8)—one in favor of the employee for nonfatal injuries and another in favor of his dependents for fatal injuries. (*American Steel Foundries v. Industrial Com.*, 361 Ill. 582.) Section 19(j) of the Act (Ill. Rev. Stat. 1969, ch. 48, par. 138.19(j)) does provide that the final adjudication of issues in one action is binding in subsequent proceedings. This section is not to be applied unless a final decision was rendered in the first proceeding. That is not the case here. Peter Carioscia filed a petition for review of the arbitrator's decision that he had not been permanently disabled by his accident. However, he died before the Industrial Commission could consider his case, and his petition for review was dismissed by the Commission, on motion of the Board of Education. The Commission never considered the validity of the arbitrator's decision. There was never a final decision that Carioscia was not permanently disabled by his fall. Absent such a final decision, section 19(j) was not applicable to this case. Consequently the principle of *res judicata* did not preclude the arbitrator in this case from finding that Carioscia's fall was a cause of his death.

For these reasons the decision of the circuit court of Cook County is reversed and the award of the Industrial Commission is reinstated.

*Judgment reversed; award reinstated.*