(No. 57254.— )

GENERAL AMERICAN LIFE INSURANCE COM-
PANY, Appellant, v. THE INDUSTRIAL COMMIS-
SION et al. (Alice Karneffel et al., Appellees).

*Opinion filed September 23, 1983.*

Peter M. Sfikas and William F. Richardson, of Chicago (Peterson, Ross, Schloerb & Seidel, of counsel), for appellant.

Perz & McGuire, of Chicago (Frank M. Perz and James M. Ridge, of counsel), for appellee Alice Karneffel.

Kane, Doy & Harrington, Ltd., of Chicago (Arthur O. Kane, of counsel), for appellee Dinkel's Bakery, Inc.

JUSTICE MORAN delivered the opinion of the court:

Claimant, Alice Karneffel, filed an application for adjustment of claim with the Industrial Commission seeking benefits for the death of her husband. A lump-sum settlement contract between claimant and her deceased husband's employer was presented to an arbitrator for approval. Petitioner, General American Life Insurance Company, filed an objection to approval of the settlement. Petitioner sought to intervene and obtain reim-

bursement for medical benefits it paid to claimant's husband from 1966 until 1976 under a group medical insurance policy. The arbitrator found petitioner lacked standing to intervene in the proceeding and denied its claim for reimbursement. She reasoned the Industrial Commission was not the forum for such a determination and approved the settlement. The Industrial Commission affirmed, and the circuit court of Cook County confirmed the Commission's decision.

Claimant's husband, George Karneffel, worked as a baker for Dinkel's Bakery, Inc. (Dinkel). Dinkel's employees were covered by a group medical policy issued by petitioner. This policy specifically excluded benefits for "sickness covered by Workmen's Compensation law, occupational disease law, or laws of a similar character."

Karneffel suffered from bronchial asthma which was aggravated at the bakery, because of his sensitivity to flour. In 1966, he submitted a claim for medical benefits to petitioner. Initially, petitioner denied the claim, contending it involved a work-related illness not covered under its policy. Karneffel then sought benefits from Dinkel's workmen's compensation carrier. This insurer, however, sent a letter to him denying coverage on the ground that his illness did not come under the provisions of the Act. Although not explained in the letter, presumably coverage was denied on the basis that his asthma was an ordinary disease of life to which the general public is exposed outside of employment. (See Ill. Rev. Stat. 1965, ch. 48, par. 172.36(d); *Western Foundry Co. v. Industrial Com.* (1943), 384 Ill. 420; *Stewart Warner Corp. v. Industrial Com.* (1941), 376 Ill. 141.) Diseases of this kind were not compensable under the Workmen's Occupational Diseases Act until it was amended in 1975. Compare Ill. Rev. Stat. 1975, ch. 48, par. 172.36(d), with Ill. Rev. Stat. 1973, ch. 48, par. 172.36(d). See *Bunney v. Industrial Com.* (1979), 75 Ill. 2d 413, 418; *Interna-*

*tional Harvester Co. v. Industrial Com.* (1973), 56 Ill. 2d 84, 93; *Rockford Transit Corp. v. Industrial Com.* (1967), 38 Ill. 2d 111, 113-14.

Karneffel notified petitioner that Dinkel's workmen's compensation carrier denied coverage of his claim. Petitioner then made several medical benefit payments to him for his asthmatic condition from 1966 until 1976. According to petitioner's own detailed statement, submitted for the record as part of an exhibit, these payments, and a few others for unrelated illnesses, totaled $7,172.94. Of this amount, only $130.40 was paid to Karneffel for his asthmatic condition subsequent to the effective date of the 1975 amendment. However, Karneffel never filed a workmen's compensation claim against his employer under either the Act, or the Workmen's Occupational Diseases Act as amended, for the $130.40 or any other amount.

On February 18, 1977, Karneffel died from "acute status asthmaticus" due to "severe allergy to wheat." In March 1977 claimant filed her claim against Dinkel seeking benefits for the death of her husband. Over the next three years, petitioner corresponded with Dinkel's workmen's compensation carrier and indicated it wanted reimbursement for the medical benefits it paid to Karneffel if any workmen's compensation benefits were paid to the widow. Subsequently, claimant and Dinkel reached an agreement to settle her claim for a lump sum of $20,000.

In October 1980 petitioner was served with notice that a hearing would be held on November 5, 1980, for the purpose of approving the settlement and that if petitioner had a claim it should make it on that date. Petitioner appeared and objected to approval of the settlement until it was first reimbursed for the benefits it paid Karneffel.

The question presented for our review is: Did the circuit court and the Commission err in denying petitioner

the right to intervene in this proceeding to obtain, out of the widow's lump-sum settlement, reimbursement for the medical benefits it paid to her deceased husband?

Relying on *Hammond v. Prudential Insurance Co. of America* (1966), 75 Ill. App. 2d 15, petitioner argues the widow's settlement with Dinkel conclusively establishes that decedent's diseased condition was compensable. Based on this premise, it reasons it should be reimbursed from her settlement by receiving a credit under the authority of section 8(j) of the Act (Ill. Rev. Stat. 1975, ch. 48, par. 138.8(j)) for the full amount of the benefits it paid to Karneffel from 1966 until 1976.

*Hammond* is distinguishable from the instant case. Moreover, it does not support petitioner's contention that all of the benefits it paid to Karneffel under its group policy were compensable under either the Act or the Workmen's Occupational Diseases Act. In *Hammond,* the employee filed a claim alleging his injuries were compensable under the Act. The arbitrator denied his claim and he appealed. Pending review, he entered into a lump-sum-settlement contract in which he agreed to accept and later received $4,000 in full settlement of all claims against his employer. This settlement specifically included all medical and hospital claims and was approved by the Commission.

The employee then brought suit in the circuit court to recover medical expenses from the group health insurer for the same injury. The health insurance policy excluded benefits for injuries covered by the Act regardless of whether such protection was afforded. The employee contended the policy exclusion was not applicable. He asserted his compromise settlement was substantially less than the benefits payable under the Act for his injuries. In addition, he maintained that, at the time of the accident, he was not acting within the scope of his employment. On this basis, he argued the settlement did not es-

tablish that his injuries were compensable and did not preclude recovery from the health insurer.

The court rejected his arguments indicating the merits of his claim under the Act were immaterial. The court concluded that to the extent his lump-sum settlement contained the medical expenses, such expenses were to be deemed compensable. Thus, they were excluded from coverage under the insurance policy.

Unlike the situation in *Hammond,* the employee in the instant case never collected any amount from his employer under the Act. There is no concern here over an employee attempting to be recompensed a second time in a separate suit for his medical expenses as there was in *Hammond.* Moreover, *Hammond* did not involve a claim filed by the widow seeking death benefits.

Petitioner also cites *Collier v. Wagner Castings Co.* (1980), 81 Ill. 2d 229, and *Aulich v. Aetna Life Insurance Co.* (1981), 101 Ill. App. 3d 661, for the proposition that Karneffel's diseased condition was compensable from 1966 to 1976. The facts in these cases are inapposite from the case at bar.

It should be noted petitioner's own exhibit reveals some of the payments it made between 1966 and 1976 were for illnesses unrelated to Karneffel's asthma or employment. The exhibit further shows that, of the total reimbursement petitioner is claiming, only $130.40 was paid after the 1975 amendment to the Workmen's Occupational Diseases Act. Since Karneffel's diseased condition was not compensable prior to July 1975, all of the group health benefits except the $130.40 were properly paid by petitioner in accordance with its insurance contract.

Regardless of the amount petitioner alleges it erroneously paid Karneffel, claimant and Dinkel argue the settlement here only involves payment of death benefits to a widow. They contend petitioner cannot reduce the wid-

ow's settlement by amounts it paid to her husband during his lifetime.

Petitioner maintains that, under Illinois law, a widow is entitled to both death and health benefits. (Ill. Rev. Stat. 1975, ch. 48, par. 172.42.) Since it was not permitted to intervene, petitioner notes there was no evidentiary hearing pertaining to the exact nature of the widow's claim. It then appears to argue that we should presume claimant's settlement contains an amount which represents the health benefits petitioner paid to her husband as well as her death benefits. On this basis, petitioner asks this court to remand the case to the Commission with instructions to enter judgment in its favor for $7,172.94 either against claimant or Dinkel's workmen's compensation carrier.

Whether Karneffel should have pursued a claim for the $130.40 or some other amount against Dinkel's workmen's compensation carrier instead of accepting payment from petitioner has no bearing here. The instant case does not involve his claim. Rather, it involves a settlement for benefits to the widow payable as compensation for an injury which resulted in her husband's death. This is an independent cause of action, separate and apart from an employee's claim during his lifetime against his employer. See *Board of Education v. Industrial Com.* (1974), 57 Ill. 2d 307, 312; *Burke v. Industrial Com.* (1938), 368 Ill. 554, 556; *American Steel Foundries v. Industrial Com.* (1935), 361 Ill. 582, 589.

Thus, whatever amount allegedly was paid in error to Karneffel during his lifetime relates to his claim, not to the claim of his widow. Petitioner cannot now seek to intervene in the widow's separate and independent cause of action and attempt to reduce her settlement by any such amount.

Petitioner's reliance on section 8(j) of the Act for a credit is also misplaced. This section provides in perti-

nent part:

"Sec. 8. The amount of compensation which shall be paid to the employee for an accidental injury *not resulting in death* is:

\* \* \*

(j) 1. In the event the injured employee receives benefits, including medical, surgical or hospital benefits under any group plan covering non-occupational disabilities contributed to wholly or partially by the employer, which benefits should not have been payable if any rights of recovery existed under this Act, then such amounts so paid to the employee from any such group plan as shall be consistent with, and limited to, the provisions of Paragraph 2 hereof, shall be credited to or against any compensation payment for temporary total incapacity for work or any medical, surgical or hospital benefits made or to be made under this Act. \*\*\* Any employer receiving such credit shall keep such employee safe and harmless from any and all claims or liabilities that may be made against him by reason of having received such payments only to the extent of such credit.

2. Nothing contained in this Act shall be construed to give the employer or the insurance carrier the right to credit for any benefits or payments received by the employee other than compensation payments provided by this Act, and where the employee receives payments other than compensation payments, whether as full or partial salary, group insurance benefits, bonuses, annuities or any other payments, the employer or insurance carrier shall receive credit for each such payment only to the extent of the compensation that would have been payable during the period covered by such payment." (Emphasis added.) Ill. Rev. Stat. 1975, ch. 48, par. 138.8(j).

This provision involves a credit which the employer or insurance carrier can apply to compensation made or to be made to the employee. There is nothing in this section providing for a credit or reimbursement to a group health insurer out of the compensation payable to a widow for an injury resulting in death to her spouse.

Petitioner next asserts it was excluded from participat-

ing in the settlement negotiations between claimant, Dinkel and Dinkel's workmen's compensation carrier. Because of this, it maintains principles of equity, public policy and judicial economy require that it be allowed to intervene and be reimbursed in full in this proceeding rather than have to pursue its claim in a separate suit. We are referred to *Aetna Life Insurance Co. v. Harris* (3d Cir. 1978), 578 F.2d 52; *Vetsch v. Schwan's Sales Enterprises* (Minn. 1979), 283 N.W.2d 884; *Brooks v. A.M.F., Inc.* (Minn. 1979), 278 N.W.2d 310; *Special Disability Trust Fund v. University of Miami* (Fla. Dist. Ct. App. 1980), 379 So. 2d 1323; *Bryan v. Henderson Electric Co.* (Ky. App. 1978), 566 S.W.2d 823; *Solimano v. Consolidated Mutual Insurance Co.* (1977), 146 N.J. Super. 393, 369 A.2d 1003.

Relying on this authority, petitioner seeks a ruling from this court that a group health insurer can intervene in a workmen's compensation case. These cases, however, involve statutes from other jurisdictions and do not provide appropriate guidance or precedents for our interpretation of the Act. Moreover, the cases cited are inapposite to the instant case. None involve a group health insurer attempting to intervene and obtain reimbursement for benefits paid to an employee during his lifetime out of a widow's separate cause of action for the employee's death.

For example, in *Aetna Life Insurance Co.,* the employee received benefits from a group health insurer covering non-work-related injuries. He then sought compensation for the same injuries from his employer under the Longshoremen's and Harbor Workers' Compensation Act (33 U.S.C. sec. 901 *et seq.* (1976)). The court liberally interpreted section 919 of the statute as permitting a claim for reimbursement and, under these facts, allowed the group health insurer to intervene.

In *Solimano,* an insurer terminated benefits for lost wages and medical expenses it had been paying to the insured for injuries suffered in an automobile accident. The

insurer contended the injuries were compensable under workmen's compensation law and asserted the insured had to seek workmen's compensation benefits. Until the insured did so, the insurer argued it had no obligation under its policy to continue making the payments. The court noted a New Jersey statutory provision provided for reimbursement to an insurance carrier from the employer when the carrier discharges an employer's medical or wage continuation obligations. It then ordered the insurer to resume payment to its insured and allowed the insurer to file a petition before the Division of Worker's Compensation to be reimbursed by the employer.

In *Special Disability Trust Fund,* the employee received medical benefits for an injury she sustained during her lunch hour under an insurance policy excluding work-related accidents. She also filed a workmen's compensation claim. Two orders, stipulated to by the employer, were entered simultaneously on the claim. One denied and dismissed it with prejudice finding the accident occurred outside of the course and scope of employment. The judge's findings indicated that the parties agreed to this order so as not to expose the claimant to a claim for reimbursement from the medical insurer. The other order approved a lump-sum settlement to the claimant for $25,000. The employer then sought reimbursement for the $25,000 it paid to the claimant from the State's Special Disability Trust Fund. In seeking this reimbursement it represented to the judge there was really no dispute as to the compensability of the claim. The judge ordered the fund to reimburse the employer. On review, the court refused to condone such practices which, the court said, required an uninvolved insurance carrier to pay benefits for an injury not within its policy coverage, while relieving the employer of its obligation to pay any compensation.

In *Brooks,* the employee received payments for an injury under two group health insurance policies which ex-

cluded claims for work-related accidents. He also filed a workmen's compensation claim for the same injury. Pursuant to Minnesota procedure, the health insurers were notified of their right to intervene and seek reimbursement. However, before trial, the employee settled with the employer, without any participation by the group health insurers, and stipulated the injury did not arise in the course of his employment. The court noted a group health insurer's right to intervene and obtain reimbursement in a workmen's compensation case originally was allowed in Minnesota by case law. It indicated that rules subsequently were adopted to ensure interested parties would be notified of their right to intervene and seek reimbursement.

It then held that, consistent with its case law and rules of practice, where a group health insurer is excluded entirely from negotiations resulting in a final settlement of the employee's claim, it should be reimbursed in full from the settlement award. *Vetsch,* also cited by petitioner, is another Minnesota case. It is factually similar to, and followed the reasoning in, *Brooks.*

In *Bryan,* the employee suffered a heart attack and filed a workmen's compensation claim. The employer denied the claim contending it was not work-related. Subsequently, the employee and his union welfare fund paid the medical expenses. His suit against the employer was successful, and both he and the welfare fund demanded payment. The employer paid the employee the sums he expended but refused to pay the welfare fund, contending it was not a "party in interest." The court disagreed, finding that a Kentucky statute provided any party in interest may file a suit to enforce a decision of the Workmen's Compensation Board. It ruled this statute applied to the welfare fund, finding it was a "party in interest," because it had paid 80% of the medical expenses. It then remanded the case to enable the welfare fund to be reimbursed.

Our act is a humane law of a remedial nature whose fundamental purpose is to provide employees and their dependents prompt, sure and definite compensation, together with a quick and efficient remedy, for injuries or death suffered in the course of employment. (See *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 180-81; *O'Brien v. Rautenbush* (1956), 10 Ill. 2d 167, 173, *overruled on other grounds by Rylander v. Chicago Short Line Ry. Co.* (1959), 17 Ill. 2d 618.) In eliminating the common law rights and defenses of employers and employees, it has established a statutory proceeding governing workmen's compensation claims. And while the Act is to be liberally construed to effectuate its purpose, it will not be given a strained construction not fairly within its provisions. See *W. J. Newman Co. v. Industrial Com.* (1933), 353 Ill. 190, 194.

We have found neither a provision in the Act nor any Illinois case which provides for intervention in a workmen's compensation case by a health insurer seeking reimbursement. Nor do we find it readily apparent that such a remedy will effectuate the purpose of the Act. While in certain circumstances such intervention might be warranted, we are of the opinion that this type of remedy in a workmen's compensation proceeding must be provided by the legislature and not established by judicial fiat.

In addition, even if we were inclined to provide a group health insurer a right to intervene and seek reimbursement, we would not do so under the facts presented in the instant case. The health insurer here is attempting, in essence, to reduce the widow's award by an amount it paid to her late husband pursuant to his claim for his injuries. As previously indicated, the widow's claim for death benefits is an independent cause of action, separate and apart from an employee's claim during his lifetime. Under these circumstances, there was no error committed in denying petitioner's objection to the settlement and its

claim for reimbursement.

For the reasons stated the judgment of the circuit court is affirmed.

*Judgment affirmed.*