TERRY HAMILTON, Appellant, v. THE INDUSTRIAL COMMISSION *et al.*
(American National Can Company, Appellee).

Fourth District   No. 4—00—0876WC

Argued June 27, 2001.—Opinion filed December 11, 2001.—Rehearing denied
January 18, 2002.

RARICK, J., specially concurring.
O'MALLEY, J., dissenting.

John F. Martin, of Meachum & Martin, of Danville, for appellant.

Robert J. Doherty, Jr., of Roddy, Leahy, Guill & Zima, Ltd., of Chicago, for
appellee.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of
the court:

On March 25, 1997, claimant, Terry Hamilton, filed an amended

application for adjustment of claim in case No. 96—WC—03534, and an application for adjustment of claim, case No. 97—WC—15903, each pursuant to the Workers' Occupational Diseases Act (Act) (820 ILCS 310/1 through 27 (West 1996)). Claimant alleged that he had contracted an occupational disease, hearing loss, arising out of and in the course of his employment with employer, Silgan Container Corporation, in case No. 96—WC—03534; and arising out of and in the course of his employment with employer, American National Can Company (ANCC), in case No. 97—WC—15903. The arbitrator found that claimant sustained accidental injuries, permanent partial hearing loss, which arose out of and in the course of employment with each employer and allocated the hearing loss between the two employers. On October 7, 1998, employer ANCC filed a petition for review of the decision of the arbitrator. The Industrial Commission (Commission) reversed the arbitrator's decision, with one commissioner dissenting. The Commission found that employer ANCC was not claimant's last employer as required under section 1(d) of the Act (820 ILCS 310/1(d) (West 1996)) and "[claimant] is not entitled to benefits." On administrative review, the circuit court of Vermilion County confirmed the Commission's decision. The issue before this court is whether the Commission's finding that employer ANCC was not claimant's last employer as required under section 1(d) of the Act and, therefore, claimant is not entitled to benefits, was contrary to law. We affirm.

Claimant began employment with ANCC, a manufacturer of tin cans, in 1970. On August 1, 1995, Silgan Container Corporation bought ANCC. Claimant continued in his employment, now with Silgan Container Corporation. On January 23, 1996, claimant filed an application for adjustment of claim and identified American Can Company/Silgan Container Corporation as employer, case No. 96—WC—03534. On March 25, 1997, claimant filed an amended application for adjustment of claim in No. 96—WC—03534 naming Silgan Container Corporation as employer. On March 25, 1997, claimant also filed an application for adjustment of claim and identified ANCC as employer, case No. 97—WC—15903. Claimant later motioned the Commission to consolidate the cases, stating that "these claims involve hearing loss sustained during periods when two different employers owned the plant where [claimant] worked." The arbitrator entered an order on August 13, 1997, allowing the motion.

After a hearing on May 12, 1998, the arbitrator entered a decision in each case finding that claimant "was exposed to excessive noise levels which resulted in hearing loss" with the date of last exposure being July 31, 1995, as to employer ANCC, and January 8, 1996, as to employer Silgan Container Corporation. The arbitrator apportioned

compensation accordingly, ANCC to pay to claimant the sum of $410.43 per week for a period of 60.7 weeks and Silgan Container Corporation to pay to claimant the sum of $410.43 per week for a period of 21.2 weeks. On October 7, 1998, employer ANCC filed a petition for review of the decision of the arbitrator. Neither Silgan Container Corporation nor claimant sought review of the decision of the arbitrator. The Commission found that employer ANCC was not claimant's last employer as required under section 1(d) of the Act (820 ILCS 310/1(d) (West 1996)) and "[claimant] is not entitled to benefits."

■ The issue before this court is whether the decision of the Commission was contrary to law. Before a reviewing court may overturn a decision of the Commission, it must find that the award was contrary to law or that the Commission's factual determinations were against the manifest weight of the evidence. *Freeman United Coal Mining Co. v. Industrial Comm'n*, 188 Ill. 2d 243, 245, 720 N.E.2d 1063, 1065 (1999).

■ Claimant argues that section 1(d) of the Act does not foreclose an award for hearing loss against ANCC, "a prior employer." Section 1(d) of the Act provides:

"The employer liable for the compensation in this Act provided shall be the employer in whose employment the employee was last exposed to the hazard of the occupational disease claimed upon regardless of the length of time of such last exposure ***. ***
***
The insurance carrier liable shall be the carrier whose policy was in effect covering the employer liable on the last day of the exposure rendering such employer liable in accordance with the provisions of this Act." 820 ILCS 310/1(d) (West 1996).

■ In the present case, Silgan Container Corporation was "the employer in whose employment the employee was last exposed to the hazard of the occupational disease claimed" within the meaning of the Act. 820 ILCS 310/1(d) (West 1996).

In *Thermos Co. v. Industrial Comm'n*, 83 Ill. 2d 54, 413 N.E.2d 1246 (1980), cited by claimant, it was necessary to determine "the date of the last exposure which caused the claimant's incapacity." *Thermos Co.*, 83 Ill. 2d at 58, 413 N.E.2d at 1248. There was no issue as to last employer and such a determination was not necessary in order to impose liability on the employer. It pertained to the wholly separate issues of (1) when compensation should commence, and (2) which of the employer's multiple insurance carriers were required to pay that compensation. Those matters are not in dispute here.

In *Fleming v. Industrial Comm'n*, 95 Ill. 2d 329, 333, 447 N.E.2d 819, 821 (1983), also cited by claimant, the supreme court held that an

award to a claimant for his hearing loss was not precluded merely because claimant continued to be exposed to the disabling cause. Here, the award to claimant has been precluded because employer ANCC is not the employer in whose employment the claimant was last exposed to the hazard of the occupational disease claimed. See also *John Deere Plow & Planter Works of Deere & Co. v. Industrial Comm'n*, 168 Ill. App. 3d 1096, 523 N.E.2d 386 (1988) (claimant filed an application for adjustment of claim under the Act alleging that his hearing loss arose out of and during course of his employment as a welder and named respondent as employer; claimant had performed welding for engineering and construction firms but did not name them as an employer in an application for adjustment of claim under the Act); *Dresser Industries v. Industrial Comm'n*, 237 Ill. App. 3d 150, 604 N.E.2d 365 (1992) (claimant testified that he had been employed as a welder by the respondent since November 1, 1982, when the respondent took over the plant from International Harvester; prior to the takeover of the plant by respondent, claimant had worked for International Harvester since 1970; claimant's only application for adjustment of claim under the Act alleged that his hearing loss arose out of and during course of his employment with respondent, Dresser Industries).

Moreover, the Illinois Administrative Code (Code) (50 Ill. Adm. Code § 7130.30 (1996)) provides:

"An employer shall be liable for the entire occupational deafness to which his employment contributed unless the employer can establish the extent of [p]etitioner's hearing loss prior to July 1, 1975. If the employer can establish prior hearing loss, the employer shall only be liable for the hearing loss caused by exposure to employer's noise after July 1, 1975."

We find the record clear; Silgan Container Corporation was "the employer in whose employment the employee was last exposed to the hazard of the occupational disease claimed," *i.e.*, hearing loss, "regardless of the length of time of such last exposure." 820 ILCS 310/1(d) (West 1996).

The order of the circuit court of Vermilion County confirming the Commission's decision is affirmed.

Affirmed.

HOFFMAN and HOLDRIDGE, JJ., concur.

JUSTICE RARICK, specially concurring:

Section 1(d) of the Act and Code section 7130.30 represent a policy decision to impose liability for the entire disability arising from a

hearing loss on the employer in whose employ the employee was last exposed to the hazard. To do otherwise would impose upon the employee the difficult, and often insurmountable, burden of proving that exposure to the noise at a particular employer's facility resulted in some degree of disability and what that disability was. In theory, allocating liability among the employers, as the claimant argues and as the arbitrator in the present case attempted to do, is more equitable. As a practical matter, however, it would often work to the disadvantage of the employee, who would have to prove how much disability is attributable to which employer. In keeping with the remedial goal of the Act, our legislature took the more pragmatic approach of imposing liability for the entire loss on the last employer in order to more readily facilitate the employee's ability to recover. Consequently, the arbitrator, the Commission, and the courts are without authority to apportion liability for a hearing loss among the employers. See *Concrete Structures of the Midwest, Inc. v. Industrial Comm'n*, 315 Ill. App. 3d 596, 599, 734 N.E.2d 970, 973 (2000).

HOFFMAN and HOLDRIDGE, JJ., join in this special concurrence.

JUSTICE O'MALLEY, dissenting:

In his special concurrence, Justice Rarick recognizes that the rule imposing the burden of compensation for damage done by the hazard of an occupational disease on the last employer to expose the employee to the hazard saves the employee the "the difficult, and often insurmountable, burden" of proving "how much disability is attributable to which employer." 326 Ill. App. 3d at 606. No doubt, such solicitude for the employee is faithful to the conviction that the Workers' Occupational Diseases Act is "a humane law of a remedial nature whose fundamental purpose is to provide employees and their dependents prompt, sure and definite compensation, together with a quick and efficient remedy, for injuries or death suffered in the course of employment" (*General American Life Insurance Co. v. Industrial Comm'n*, 97 Ill. 2d 359, 370, 454 N.E.2d 643 (1983)). Certainly, the "last exposure" rule should continue to protect the employee who is unable to apportion his disability between employers. However, where, as here, the employee has sustained what Justice Rarick describes as the "difficult" and nearly "insurmountable" burden of proving that each period of employment resulted in a discrete amount of permanent partial disability, and yet finds himself without sufficient compensation, not through lack of proof, but simply because he did not timely seek compensation for the full measure of his disability

from the last employer to expose him to the hazard, it is clear to me that the good intentions behind the rule have thwarted the humanitarian intentions behind the Act itself. Under the rules of procedure, it is too late for claimant to seek additional compensation from Silgan; he is left with, perhaps, a claim against his attorney.

The Act is to be construed liberally to effectuate its humanitarian purpose. *General American*, 97 Ill. 2d at 370, 454 N.E.2d at 649. In my view, the majority's reading of section 1(d) of the Act is neither appropriately liberal nor consistent with supreme court precedent.

The majority's definition of "last exposed" is difficult to reconcile with how the phrase is applied in *Thermos Co.* In *Thermos Co.*, the claimant worked on an assembly line in the presence of chemical and plastic fumes. In October 1968, she was diagnosed with acute bronchitis. In March 1969, she was diagnosed with acute pharyngitis with laryngitis. She was diagnosed on January 18, 1971, with pneumonia, acute tracheobronchitis, and acute bronchial asthma. Her doctor removed her from work. By the time that claimant returned to work in January 1972, the employer had switched insurance carriers. Claimant was assigned to a different location in the employer's plant to avoid exposure to the noxious fumes. In October 1972, she again was exposed to harmful fumes in the employer's plant. Complaining of coughing and wheezing, she consulted a doctor in November 1972 and was diagnosed with acute bronchial asthma. Claimant took another job but, at the time of the hearing, was still suffering from chest pains and shortness of breath.

Based on the records of the claimant's treatment, the arbitrator found that claimant was "last exposed to the hazards of an occupational disease" on January 18, 1971, and awarded her compensation for temporary total incapacity from that date forward. *Thermos Co.*, 83 Ill. 2d at 57, 413 N.E.2d at 1247. The arbitrator also found that an occupational disease had caused a permanent partial disability. The issue on appeal was which insurance carrier was insuring the employer when claimant was "last exposed" to the hazards of the noxious fumes. Although recognizing that the claimant was again exposed to the harmful fumes in 1972, the supreme court affirmed the finding of the arbitrator that, for purposes of section 1(d), she was "last exposed" in 1972:

> "The record shows that by October of 1972 the claimant's upper respiratory system had already been impaired to the extent that she had suffered a permanent partial incapacity. Though her condition had improved during the 20 months she was not exposed to the chemical fumes, the claimant did not testify, and the record does not show, that she had fully recovered. Furthermore, the medi-

cal records indicate that her earlier exposure had greatly increased her sensitivity to irritating odors and fumes and made her more vulnerable to permanent damage upon reexposure. It was for this reason that she was reassigned to another plant and why she eventually had to change her employment. We consider that the legislative intent under the circumstances here would be to determine not the date on which a claimant was last exposed in a literal and narrow sense only to the hazards of an occupational disease, but to determine the date of the last exposure which caused the claimant's incapacity." *Thermos Co.*, 83 Ill. 2d at 57-58, 413 N.E.2d at 1248.

In the case at hand, the arbitrator found that, as a consequence of noise exposure at both employers, claimant lost 42.5% of the hearing in his right ear and 39.4% of the hearing in his left ear. However, the arbitrator found that by the time claimant began working for Silgan, he had already suffered permanent and complete loss of 24.3% of the hearing in his right ear and permanent and complete loss of 36.4% of the hearing in his left ear, all due to noise exposure at ANCC. These factual determinations were left standing by the Commission and are not disputed on this appeal. Regardless of the unchallenged fact that, by the time of the exposure at Silgan, claimant had already suffered permanent partial disability, the majority holds that claimant is not entitled to compensation because his exposure to noise continued after his employment with ANCC ceased. This is the very inverse of the approach taken in *Thermos Co.* There, it was the fact that the claimant had already suffered permanent partial disability as a result of exposure in 1971 and before that compelled the court to hold, despite claimant's continued exposure to fumes in 1972, that claimant was, for purposes of section 1(d), "last exposed" in 1971. See *Thermos Co.*, 83 Ill. 2d at 57-58, 413 N.E.2d at 1248. The majority applies the "narrow and literal" sense of "last exposed" that the court explicitly rejected in *Thermos Co.*

The majority suggests that *Thermos Co.* is distinguishable because there was no issue there "as to last employer and such a determination was not necessary in order to impose liability on the employer." 326 Ill. App. 3d at 604. I recognize there was only one employer in *Thermos Co.*; however, it was the definition of "last exposed" not "last employer" that was critical to the court's holding. Section 1(d) provides that the insurance carrier whose policy was in effect "on the last day of the exposure rendering such employer liable in accordance with the provisions of this Act." 820 ILCS 310/1(d) (West 1998). As the *Thermos Co.* court recognized (*Thermos Co.*, 83 Ill. 2d at 57-58, 413 N.E.2d at 1248), this language directs the court to determine on

what day the claimant was "last exposed to the hazard of the occupational disease" (820 ILCS 310/1(d) (West 1998)). Therefore, despite the fact that *Thermos Co.* dealt with only one employer, the court's construal of "last exposed" is controlling here.

Although the majority does not make the point, I recognize that one might attempt to distinguish this case from *Thermos Co.* on the basis that there was no finding in *Thermos Co.*, as there was in this case, of additional damage on reexposure. One might argue that, had the court in *Thermos Co.* found such additional damage to the claimant's respiratory system, it would have considered the 1972 exposure to have been her "last exposure" just as the majority considered claimant's exposure while employed with Silban to have been his "last exposure." This argument fails. Although the *Thermos Co.* court did not explicitly note any discrete level of additional damage done to the claimant in 1972, its remarks clearly imply that such additional damage occurred. Particularly revealing are the court's remarks in responding to the argument that, for purposes of section 1(d), claimant's "last exposure" to the fumes occurred in October 1972 when she again was exposed because, prior to that date, she had been free of symptoms since she returned to work in 1972. In stressing that "by October of 1972 the claimant's upper respiratory system *had already been impaired* to the extent that she had suffered a permanent partial incapacity," the court evidently was contemplating, but also minimizing the importance under section 1(d) of, impairment that had *not* already occurred by October 1972—that is, impairment that had occurred during or after that month. (Emphasis added.) *Thermos Co.*, 83 Ill. 2d at 57, 413 N.E.2d at 1248. This reading is consistent with the court's later observation that the exposure in 1971 and before made the claimant "more vulnerable to permanent damage upon reexposure" (*Thermos Co.*, 83 Ill. 2d at 58, 413 N.E.2d at 1248). Therefore, I conclude that there are no significant factual differences between *Thermos Co.* and this case.

In maintaining that claimant is entitled to compensation from ANCC, I do not mean to imply that, had claimant timely sought to recover the full amount of compensation from Silgan, the latter could have avoided recovery by observing, correctly, that claimant's hearing had been impaired before he was employed by Silgan. Construed liberally in favor of the employee, section 1(d) is not such a shield for the employer. Clearly, *Thermos Co.* places no such bounds on liability. Nowhere in holding that subsequent exposure does not preclude liability under section 1(d) does *Thermos Co.* indicate that previous exposure precludes liability. There is nothing in the opinion suggesting that the court would not also have affirmed the Commission had it

found the second insurance company liable. In affirming, the court would have cited the fact that renewed exposure to hazardous fumes had caused additional permanent harm to the claimant while the employer was covered by the second insurance company.

I would hold that section 1(d), although not permitting double recovery, permits a claimant to recover the full measure of compensation either from the last in a succession of employers over the course of whose employ the claimant suffered permanent damage from exposure to the hazard of an occupational disease (the length of the last exposure and the fact or degree of harm caused having no effect on the liability of the last employer) *or* from an earlier employer in the succession who the employee can prove caused discrete permanent harm. The latter basis for liability exists here. Accordingly, despite the fact that claimant's hearing was further impaired while he was employed by Silgan, he was, for purposes of section 1(d), "last exposed" to the hazards of an occupational disease while at ANCC because he there suffered discrete permanent partial disability from noise exposure.